## McDANIEL v. MOODY.

1. A ginhouse, the running gear thereof, and a packing screw, are fixtures, inseparable from the realty, and pass with the freehold.
2. Where real property is levied on, under an attachment granted by a justice of the peace, and is claimed by a third person, the justice cannot award a *venire facias*, to try the title.
3. The Circuit Court has exclusive jurisdiction as to the sale of real property, levied on in virtue of executions, granted by a justice of the peace.
4. The Supreme Court is not confined to a revision of the errors assigned, when the Court below had no jurisdiction of the cause.

THREE attachments were sued out from a justice's court of Montgomery county, by the plaintiff McDaniel, against one Miller, and levied on a cotton gin, the running gear

thereof, and a packing screw, as the property of said Mil-ler, all of which was claimed by the defendant Moody, as belonging to him. The justice thereupon issued a writ of *venire facias*, summoning a jury, before whom the title was tried, and who found the property subject to the plain-tiff's executions. Moody filed his petition to the Judge of the County Court, alleging that his gin house, running gear and packing screw, without mentioning the cotton gin, had been unjustly condemned, &c., and praying for writs of *certiorari*, to take so much of the cases up to the County Court, as related to the property named in his petition, which were granted according to the prayer of the petition. The justice sent up the cases entire, and certified that there was no such case before him, as the one described in the *certiorari*. On the return of the writs, the plaintiff moved to quash the proceedings, on the ground that a part of a case could not be removed, but the motion was overruled; whereupon, the plaintiff tendered an issue upon the facts set forth in the claimant's affidavit, in which he had asserted a claim to the gin, running gear and screw, and not to the house; in which issue the claimant refused to join; and the Court determined, that the claimant could at any stage of the proceedings, without the consent of the plaintiff, abandon any part of the property he had first claimed, and directed the case to be submitted to the jury, so far as the running gear and screw were in question. No issue was joined, and the Court charged the jury, that the running gear and screw were fixtures, and not subject to this attachment, whereupon, they found for the claimant. All which orders and decisions of the County Court, were excepted to by McDaniel, and are here assigned for error.

THORINGTON, for plaintiff in error. It has been repeatedly decided, that there must be an issue for a jury to try, but here there was none; the issue tendered by the plaintiff in this case, was rejected by the defendant, and the trial was had without any. It is inconsistent to send up part of the proceedings only, and is incurable by verdict. The proceedings here then were erroneous, and should have been quashed. A party cannot dismiss a part of his claim whenever he pleases, and without the consent of the opposite party,[a] because it has the effect of putting all the costs upon the other. And where proceedings are had before a justice of the peace, he is peremptorily required to send up all the papers.[b] If a party claim one

*Margin notes:*

JANUARY 1831

Moody
v.
McDaniel.

[a] Laws of Ala 320.

[b] Laws of Ala 593.

JANUARY 1831 hundred head of cattle, and sustains his title to one only, discontinuing as to the ninety nine, he puts the costs for the whole on the opposite party. This would defeat the design of the statute, which is beneficial, and ought to be sustained. The running gear of a gin is not necessarily a fixture; it is not immovable; on the contrary, they are usually prepared elsewhere, than the place where used, and a wagon will carry the whole. They are never attached to the freehold, and the Court should have left it to the jury, who might have found otherwise. As to what are properly fixtures, see 20 Johnson's Reports, 29. The claimant could not object to the proceedings between Mc-Daniel and Miller.[a]

*Moody v. McDaniel.*

a 3 Bibb R. 288 cited in Am. Dig. 208

GOLDTHWAITE, for defendant in error. This case was continued at the term of the County Court, to which the *certiorari* was returnable, and the motion to quash could not be made at any subsequent term. If the proceedings were so defective, that a judgment could never be obtained, it should have been continued no longer: but the plaintiff went to the jury. I contend that a party can abandon a part of his claim, so as to save costs. Suppose forty nine out of fifty were properly claimed, and only one not properly claimed, must he be mulct and endamaged, when he is willing to dismiss as to one; it would be a hardship. No injury could result to the plaintiff in the execution, for he could have a *venditioni exponas,* issued for the property abandoned. The question of fixtures does not properly arise here; the plaintiff is a trespasser; the improvements were on our land; and the course pursued below was correct; there was no other method. Suppose a jury are summoned to try the right of property in two negroes, and they find for the claimant as to one, and against him as to the other. Could not the Court in its discretion, grant a new trial as to the one wrongfully condemned, must the trial be *de novo* for both; certainly the verdict will stand as to the one properly decided.

THORINGTON, in conclusion. The statute is general, which forbids the claimant in a trial of the right of property to dismiss, and if he could not do so in the Circuit Court, he cannot do so in a case arising before a magistrate. Suppose a statute says you shall not steal a man's property, would the construction be that he can steal a part? it is the same course of reasoning here in the defendant's demand-

ing an appeal from a part of a case. The time for elect-
ing what he contends for was past: he asserted his claim on
oath, and he cannot say it was inadvertent. The plaintiff
had no remedy against the property abandoned, and if the
claimant was insolvent, the security in the bond could
alone be looked to; but the bond is still in litigation and
not forfeited. And suppose we were to levy on it again,
he could claim it again, and so on many times; and for
every claim, the plaintiff would have to pay the costs.
The want of issue is an incurable defect, and when the
defendant refused to join, he should have been *non pros'd.*
The question of fixture, was one purely for the jury; and
whether the improvement was put on the land by permis-
sion or not, and the terms of that permission. But the
Court below undertook to say it was a fixture at all events.

By JUDGE PERRY. Without noticing any of the
causes assigned for error, we will proceed to dispose of
this case, for want of jurisdiction, in the first place in the
justice of the peace, and consequently of the County Court,
over the subject matter of controversy. In determining
this question, it will be only necessary to consider the
nature of the property, which was the subject of trial
before the justice of the peace, the same being a gin house,
running gear thereof, and a packing screw, and if it be
found that the property in dispute are fixtures and belong
to the realty, it will at once appear, that the justice had no
right to award a *venire facias*, to try the title. Real pro-
perty then consists of land, and includes all houses and
other buildings standing thereon, erected for the enjoy-
ment of the freehold, of a permanent and immovable na-
ture. The improvements in question, are as permanent
and immovable, and as necessary to the enjoyment of the
freehold, as any other fixtures whatever, and the freehold
interest would be as much deteriorated by their removal, as
by that of a house of the same value, and indeed, when we
consider the object of erecting such improvements, we are
driven to the conclusion, that they are in this country,
among the most permanent improvements of freehold
estates; that they are fixtures, inseparable from the realty,
and would pass with the freehold.

Having arrived at this conclusion, it remains to be in-
quired, how far the title to land can be affected by pro-
ceedings had before justices of the peace. The legislature
in 1818,[a] passed a law upon this subject, in which it is said

[a] Laws of Ala 315.

that "whenever it shall hereafter become necessary for want of personal property to levy an execution, issued by a justice of the peace upon land, it shall be the duty of the officer levying such execution, to return the same to the next superior Court of his county, and such Court shall, on motion of the plaintiff, and it appearing by an exhibition of the proceedings before the justice, that the same have been regular order, a sale of such land, or whatever part may be necessary to satisfy such execution." From the provisions of this statute, it is clear that the Circuit Courts are vested with the exclusive jurisdiction, as regards the sale of real property, when levied on by execution, issued by a justice of the peace, and the legislature has been so cautious as to require that the Circuit Courts should be satisfied that the proceedings of the justice of the peace were regular, or in other words, that they were in accordance with the principles of law. Thus they have taken from the justice all jurisdiction over the realty, in order that the title to that species of property might be better protected and made more secure. If land then can only be levied on by execution, issued by a justice of the peace, in default of personal property, it cannot be made subject to attachment, issued by a justice of the peace, upon a debt within his jurisdiction, because the statute subjecting lands to the payment of debts within a justice's jurisdiction, does it alone for want of real property, which the officer is bound to certify to the Circuit Court, when he returns the execution, for the purpose of having the land sold, which he could not do upon attachment. The justice of the peace therefore having no jurisdiction to try the title to real property, it will be conceded at once that the County Court could have no authority to correct that error by a trial *de novo*.

This case is not within the rule which confines this Court to the errors assigned. That rule presupposes that the Court below had jurisdiction, and that the cause would be affirmed, reversed, or remanded, according as the law should require. But in this, there can be no such judgment as that of reversing and remanding, for the want of jurisdiction in the Court below to execute it. This Court is therefore of opinion that the judgment be reversed.

Judgment reversed.

LIPSCOMB, not sitting.