## McCOSKER *vs.* BRADY and others.

Where a bill, for a partition, alleged that a pretended will, under which the defendants claimed title to a part of the premises, was invalid, and prayed that it might be annulled and cancelled, and declared void; or, in case the same should be decreed to be valid, then that the complainant might have a partition of the premises; *Held* that the prayer for a partition was inconsistent with the case made by the complainant's bill.

*Held* also, that if the complainant was ignorant whether the alleged devise to the defendants was valid or invalid, the statements in the bill, as well as the prayer for relief, should have been so framed as to present the case in a double aspect.

Frame of a bill with a double aspect, and a prayer for relief in the alternative; as the facts may appear.

A trust to receive the rents and profits of real estate, and to pay certain annuities to two sons of the testator, for five years, if they should so long live, and to pay the surplus rents and profits to one of them, is a valid trust, under the provisions of the revised statutes, and will continue for five years, notwithstanding the death of one of the annuitants within the five years; or until the trust is terminated by the death of the other annuitant within that period.

Where a valid trust as to real estate is created by will, the whole legal estate is vested in the trustees, so long as any of the valid purposes for which the trust was created continue; so that the *cestui que trust* will take no estate in the lands during the continuance of the trust.

If one of the three trustees named in a will dies, and the other two refuse to accept the trust, the trust devolves upon the court of chancery, under the provisions of the revised statutes.

Where a trust has devolved upon the court of chancery, the parties interested in the trust estate may apply to the court to have a receiver appointed to collect and preserve the rents and profits of the property until a new trustee is appointed.

Where a bill for partition is filed, and the complainant subsequently dies, and his devisee thereupon files a bill to revive and continue the proceedings in the original suit, it is no objection to this last bill that the complainant is an infant; and was therefore incapable of commencing an original suit for the partition of lands.

Such a bill, filed by a devisee, although it is so far an original bill that the validity of the devise may be contested thereon, is in reality a bill to revive and continue the proceedings in the original suit.

Under the 23d rule of the court of chancery, if the defendant, in such a suit, does not deny the validity of the devise, upon which the right of the new complainant, to revive and continue the original suit, and to have the benefit of the proceedings therein, rests, such suit may be revived upon motion; without waiting to bring the new suit to a hearing upon such new matter.

Where the right of the devisee, to revive and continue the proceedings in the original suit, as the proper representative of the former complainant in such suit, is admitted, or has been established by a decree founded upon the new matter, the new complainant is entitled to the same benefit of those proceedings, so far as his inter-

McCosker *v.* Brady.

est as devisee is concerned, as if he had been in a situation to continue those proceedings by a simple bill of revivor.

The abatement of a suit does not discharge a receiver, who has been previously appointed in such suit.

Where a bill contains no statements which can entitle the complainant to a decree for a partition in the suit, the mere prayer for a partition, in a particular event contemplated by such prayer, does not render the bill multifarious.

THIS case came before the chancellor upon the separate appeals of J. R. Brady and J. T. Brady, two of the defendants in this suit, from a decretal order of the vice chancellor of the first circuit, overruling their several demurrers to the complainant's bill.

John McCosker the elder, on the 26th of March, 1839, died seised of certain real estate, in the city of New-York, particularly described in the bill of Thomas McCosker hereafter mentioned ; and left his two sons, John McCosker the younger, and Thomas McCosker, his only children and heirs. By his will, made in 1834, he directed his executors, one of whom died in his lifetime and the other two of whom refused to accept the trust, to take possession of all his real and personal estate, except such as was bequeathed to his wife, and to sell the personal estate and to rent the real estate ; and to receive the rents thereof for five years from the time of his death, and apply the same to the payment of his debts and the annuities specified in his will, and to pay over the balance to his son John, until the expiration of the five years. He then devised the whole of his real estate, after the expiration of the five years, except a house and lot in Houston-street which he subsequently disposed of in his lifetime, to his son John during his natural life, with remainder to his issue, in fee ; and in case his son John should die without issue, then the said real estate was to go to the heirs of the testator's brother Thomas, who was then residing in Ireland. The testator then gave to his son John an annuity of $200, to be paid quarterly, during the five years. He gave a similar annuity to his son Thomas during his natural life ; to be paid to him by the executors quarterly, during the five years, and by his brother John or his heirs after that time. This will was duly proved as a will both of real and personal estate ; and letters of administration, with

McCosker *v.* Brady.

the will annexed, were granted to John McCosker the younger. At the time of the death of John McCosker the elder, his only descendants, then living, were his two sons named in his will, and the complainant in the present suit; who was alleged to be the son and only child of the testator's son Thomas. Thomas McCosker, the brother of the testator, and whose heirs, by the terms of the will, were made the residuary devisees, in case of the death of John McCosker the younger without issue, was still alive, and had several children and descendants then living; but he and they were all aliens, and incapable of taking real estate in this state by devise or descent. And he and they continued to be so incapable at the time of the death of John McCosker the younger; who died in 1843, without issue, and unmarried, and without having sold his interest in the real estate of his father; leaving his brother Thomas and the complainant in the present suit, surviving.

On the 12th of March, 1844, and within five years after the death of his father, Thomas McCosker, the son of John McCosker the elder, filed a bill in this court, before the vice chancellor of the first circuit, against the complainant in the present suit and against Maria L. Brady, J. R. Brady and J. T. Brady, who were the defendants in the present suit, stating the before mentioned facts. That bill also stated that, in February, 1842, John McCosker the younger leased one of the lots in New-York, of which his father died seized, to C. Maas for three years from the first of May, 1842, at an annual rent of $500 ; that the assignee of Maas was in possession of that lot under such lease, and was paying rent therefor to R. Martin, as agent for whoever was entitled to the same ; and that the residue of the lots of which John McCosker the elder died siezed, were in the hands of numerous occupants as tenants thereof, and from whom the rents could not be obtained without the constant attention of some person having all the powers of a landlord to collect the same. That bill further stated that the personal estate of the testator was all disposed of by John McCosker the younger, who at the time of his death did not leave sufficient personal property to pay his funeral expenses; and that the complainant, in that suit, upon the death

of his brother, became entitled to the one half of the real estate of which the testator died seized, as one of the heirs at law of his father, and to the other half thereof as the heir at law of his brother John. That bill further stated that the defendant J. T. Brady propounded to the surrogate of New-York, for proof as a will of real and personal estate, an instrument in writing, dated in June, 1842, purporting to be the will of John McCosker the younger, and to have been executed in the presence of two subscribing witnesses, and disposing of his property as follows : " First, I direct that my debts and funeral expenses be paid as soon as possible after my decease. Secondly, my brother Thomas is entitled, under my father's will, to an annuity of $200 during his life. I give him, in addition, an annuity of $500 during his life, and direct that after his death, the same amount, that is $500, be annually paid to his son John Andrew, for life. Thirdly, I give and bequeath to the Roman Catholic Orphan Asylum of the city of New-York, whatever be its corporate name, $500. Fourthly, I give, devise, and bequeath the residue of my estate, real and personal, to John Riker Brady and Maria Louisa Brady, as tenants in common forever. Fifthly, if my said brother Thomas McCosker, or his son, after my decease, shall commence any suit or proceeding to destroy or impair this my will, or any provision or intention thereof, his right to any share or interest in my estate shall thenceforth cease and determine, anything herein before contained to the contrary notwithstanding. Lastly, I appoint Robert Martin and James T. Brady, executors, &c." That bill further stated that Martin declined to act as executor, but that the other executor named in the said pretended will claimed to act as such executor ; that Thomas McCosker, the complainant in that bill, opposed the proof of the instrument propounded before the surrogate as the will of John McCosker the younger, and that the question as to its validity was still pending and undetermined before the surrogate. That bill further stated that in consequence of the doubt thrown upon the title of the complainant therein, by the said pretended will, his friends, in his absence and without his knowledge or consent, united with the said J. T. Brady, who assumed to act as the

friend of the claimants under that pretended will, in requesting Martin to take the control and management of the property and receive the rents thereof, as the agent for whoever might be entitled thereto, and that he accordingly assumed such agency, and was continuing to act and to receive the rents of the property as such agent; and that all the objects of the trust term of five years created by the will of John McCosker the elder had been satisfied, except as to the annuity of $200 to the complainant in that suit. That bill further charged that John McCosker the younger, in consequence of intemperate habits and an impaired intellect, was under the influence and control of the defendant James T. Brady, who was his attorney and agent in relation to the management of his property and the collection of his rents, &c.; and that Brady took an improper advantage of his situation, to procure the said pretended will to be made in favor of his own brother and sister, who were in nowise related to John McCosker the younger, either by blood or marriage; and that his alleged will was wholly void, so that he died intestate. That bill further stated that the lands in question were worth about $3000 a year; that no part of the complainant's annuity had been paid to him since his brother's death, except the one half of the rents of the property which he had received from Martin; that the residuary devisees named in the pretended will, were destitute of property; and that neither of them was in the actual possession or occupation of the lands in question or any part thereof, by themselves or their tenants, or in the receipt of the rents or profits. The complainant, in and by that bill, claimed and insisted, that the said pretended will was a cloud upon his title, and that it should be declared void by a decree of this court, and that the residuary devisees named therein should be perpetually restrained from asserting any claim to the lands in question under the same; and that in case it should be decided to be a valid will, such complainant was entitled to be paid the arrears of his annuity, under the will of his father, and also the annuity of $500 given to him by the said pretended will of his brother. He also insisted that, in the case last supposed, he was still seized of one undivided half of the lands in

McCosker *v.* Brady.

question, by descent from his father; and that the residuary devisees in the will of his brother were each seised in fee of one quarter thereof, under such will, subject to one fourth of the $200 annuity given to him for life by the will of his father, and to one half of the $500 annuity given to him by the alleged will of his brother, and that no other person was interested in the said lands except the assignee of the lease for three years given to Maas. He thereupon prayed for an answer without oath, and that a receiver of the rents and profits of the premises might be appointed, to take charge of the same pending the litigation, and that the pretended will of John McCosker the younger might be declared void, and might be decreed to be delivered up and cancelled, &c.; or in case the same should be held to be valid, that then a partition might be made, in such a manner as to protect the equitable rights of the assignee of the lease given by John McCosker to Maas, and that provision might be made for the payment or security of the annuities to the complainant in that bill; and that he might have such further or such other relief in the premises as the nature of the case might require, &c.

The several defendants in that bill, being served with process of subpœna, appeared therein. John Andrew McCosker, the complainant in the present suit, and Maria L. Brady, being infants, put in general answers by their respective guardians; and the defendant J. T. Brady demurred to the bill. J. R. Brady put in an answer, in which he admitted that John McCosker, the elder, died seised of the lands in question, and that he devised the same in the manner stated in that bill; that the complainant, in that suit, was the sole heir at law of his father and brother; and that the contingent limitation over of the lands in question, by the will of John McCosker the elder, to the heirs of his brother Thomas, then residing in Ireland, was void. But he denied that the complainant in the present suit was a son of the complainant in that suit, or that the complainant in that suit was entitled to the lands in question, or to any part thereof, by descent or otherwise. He also denied that the alleged will of John McCosker the younger, was invalid, but

insisted that it was valid, and vested in him and his sister a good title to the whole of the lands in question. A replication to that answer was filed; and a receiver of the rents and profits of the lands in question was appointed, under an order of the vice chancellor, made in that suit, in April, 1844; and the tenants were directed to attorn and pay over the rents and profits of the premises to such receiver. Before any further proceedings were had in that suit the complainant therein died.

In October, 1844, John Andrew McCosker, who is still an infant, filed his bill in this cause, by his next friend, before the same vice chancellor; stating the filing of the bill in the before mentioned suit, the charges and allegations contained therein, the prayer thereof and the proceedings in that suit, and the subsequent death of the complainant therein, as before mentioned. The bill in the present suit further stated, that all the matters stated in the said bill of Thomas McCosker were true; that the said Thomas by his will devised all his real estate to the present complainant; in which devise was included all the right, title and interest of the said Thomas, the father of the present complainant, in and to the lands in the former bill mentioned; and that the matter of proving the said pretended will of John McCosker the younger was still pending, before the surrogate, and undetermined. The bill in this suit further stated, that by the death of Thomas McCosker the former suit abated, but that the complainant in the present suit was advised and believed that he, as such devisee, and as sole heir at law of the said Thomas, was entitled to have the said pretended will of John McCosker the younger, annulled and cancelled, and declared void, &c. as prayed for in the said original bill; or in case the same should be decreed to be valid, then that he, as such devisee and heir of the said Thomas, was entitled to a partition of the premises, and to have the annuity of $500 secured to him; and if such partition could not be had in this suit, that he was entitled to have and receive one half of the rents and profits of the premises in question from the time of the death of the said Thomas McCosker. He therefore prayed for the relief thus claimed, and that he might have

against the defendants in the present suit the benefit and advantage of the original suit; and that he might have such furthei and additional relief, or other and different relief, as should be agreeable to equity.

The appellants put in separate demurrers to the whole bill, stating therein several special causes of demurrer.

*H. F. Clark*, for appellants. The bill is multifarious. 1. It presents a claim against all the defendants to have the will set aside. 2. It prays a decree for partition against John R. and Maria Louisa Brady. In this subject matter James T. Brady has no interest. He would not be a proper party to a bill legitimately filed for partition alone. 3. The complainant prays relief in different capacities and rights; under his father as devisee of John McCosker the elder, and against his will; and as legatee of John McCosker the younger, and against his will. The prayer for the securing of the annuity relates to a subject matter in which the defendant James S. Brady has no interest. 4. It appears from the bill that the complainant is not in possession of the premises; and there is no allegation that the parties are seised as tenants in common. (*Johnson* v. *Johnson*, 6 *John. Ch. Rep.* 163. *Mulock* v. *Mulock*, 1 *Edw.* 14. *Pomeroy* v. *Pomeroy*, 1 *John. Ch. Rep.* 606. *West* v. *Randall*, 2 *Mason*, 181. *Stewart's heirs* v. *Coulter*, 4 *Rand.* 74. *Boyd* v. *Hoyt*, 5 *Paige*, 65. *Colton* v. *Ross*, 2 *Id.* 396. *Lloyd* v. *Brewster*, 4 *Id.* 537. *Fellows* v. *Fellows*, 4 *Cowen*, 682. *Story's Eq.* § 254, 271.)

The bill prays inconsistent relief, founded on cases which are inconsistent with each other. 1. If the facts stated in the bill be true, partition cannot be decreed. 2. The state of facts which will justify partition is wholly incompatible with a decree setting aside the will.

The court of chancery has no jurisdiction to set aside a will of real estate on the ground of the incapacity of the testator. Although this jurisdiction may have been sometimes exercised, and an issue of *devisavit vel non* awarded, it has only been in cases where the defendants submitted without objection, to the

McCosker v. Brady.

jurisdiction claimed., If there be no submission, the only remedy of the heir at law who claims against a will is by an action at law. There his remedy is perfect. (1 *Story's Eq.* 194, 243, 421, 2, 672, *n.* 1 *Fonb. Eq.* 233 *and notes, a, x. Bowen* v. *Idley,* 6 *Paige,* 46. *Colton* v. *Ross,* 2 *Id.* 396. An infant cannot file a bill for the partition of real estate. (2 *R. S.* 317, § 1.)

If the court has any jurisdiction over this cause, it cannot be exercised upon the case made by this bill. The suit commenced by Thomas McCosker, absolutely and totally abated on his death. The present complainant should therefore have filed an original bill in the nature of a bill of revivor. (2 *Barbour's Ch. Prac.* 36.)

If it is insisted that the bill in this case is a bill of revivor, the appellants submit that such a bill cannot be filed by a defendant until after a decree in the original suit entitling him to an interest in the further continuance of the suit. (*Souillard* v. *Dias,* 9 *Paige,* 393. 2 *Barb. Ch. Pr.* 41.)

The prayer for an account of the rents and profits which accrued before the decease of Thomas McCosker cannot be sustained. And the bill, so far as relates to this prayer, was demurrable; because such an account can only be enforced by the personal representative of the decedent. (*Hoffman* v. *Treadwell,* 6 *Paige,* 308.)

No facts are stated in the bill which justified the making of James T. Brady a party to the suit. And no decree or relief is prayed for, as against him. (*Mitf.* 160. *Smith* v. *Snow,* 3 *Madd. Rep.* 10. 2 *Story's Eq.* § 1499. *Kitch* v. *Dalton,* 8 *Price,* 12.)

*C. O'Conor,* for the respondent. The bill filed by Thomas McCosker was well framed as a bill in two aspects; each of which presented a proper ground of relief in equity. The primary aspect, i. e., relief against the pretended will of John McCosker the younger, was well founded. 1. The lease to Caarsten Maas was an impediment to ejectment, and therefore a bill was maintainable. (*Pemberton* v. *Pemberton,* 13 *Ves.*

299. *Jones* v. *Jones, 7 Price,* 666; *S. C.* 3 *Meriv.* 131, *and case in note.* 1 *Sch. & Lef.* 430. 3 *Ves. sen.* 286. *Ambl.* 429. 1 *Atk.* 540. 2 *Chit. Dig.* 1055, *tit. Practice, injunction* 16. *Armitage* v. *Wadsworth,* 1 *Madd.* 110.) 2. The trust term of five years created by his father's will and yet unexpired, was a subject of equity cognizance, and entitled him to relief here. 3. The premises not being in the actual possession of the defendants, or any one holding under them, he had a right to a receiver pendente lite; the defendants being irresponsible, and the loss of rents irremediable. (*Powis* v. *Andrews,* 3 *Bro. P. C.* 505. 6 *Ves.* 172. 2 *Ves. & Beam.* 87 *to* 96.) 4. Ejectment would not lie against the defendants; and the pretended will is a cloud upon the title which a court of law cannot remove. (*Messerole* v. *Brooklyn,* 8 *Paige,* 209. 26 *Wend.* 137. *Briggs* v. *French,* 1 *Summ.* 505.) The rule that chancery will not take cognizance of a simple bill to set aside a will of real estate is inconvenient and anomalous. (5 *Ves.* 646. 1 *Story's Eq.* § 440.) No effort should be made to enlarge it; but slight circumstances of equity should be held to take cases out of it. (*See note to* 1 *Munf.* 554.) Certainly J. A. McCosker could not bring a suit against the receiver.

A prayer in the alternative, for partition in case the will of John McCosker the younger should be adjudged to be valid, was not inconsistent with the prayer to set that will aside. 1. Secondary or alternative relief, arising out of matters stated in the bill, though it be altogether inconsistent with the relief primarily sought, may be granted; provided an appropriate alternative prayer be inserted. But the court would not grant, under the prayer for general relief, a special relief inconsistent with the special relief prayed for; although a sufficient case should appear in the bill; for this would lead to surprise. (*Colton* v. *Ross,* 2 *Paige,* 396.) 2. Where, however, the alternative prayer is inserted, and without a perversion of truth the complainant is able to present a case requiring one or the other of the opposite kinds of relief, the court may take the proofs and award the one or the other relief as justice may require. (*Ellis* v. *Ellis,* 1 *Dev. Eq. Rep.* 398. *Stapleton* v. *Stapleton,* 1 *Atk.* 6.) The

McCosker *v.* Brady.

inconsistency for which bills have been condemned as being not properly in the alternative, is of the most absolute kind. (*Lloyd* v. *Brewster*, 4 *Paige*, 540, 41. *Grimes* v. *Day*, 2 *Atk.* 142.) If this bill does not properly present an alternative case for relief; then for that very reason it is not multifarious. Defendants should have demurred to the latter prayer. (*Varick* v. *Smith*, 5 *Paige*, 160.) The technical difficulty of misjoinder does not exist in chancery. The question there is, can the matters be conveniently disposed of in one suit? (*Story's Eq. Pl.* § 539, 538, 537. *Gaines* v. *Chew*, 2 *How. R.* 642.) It is convenient to settle a question of title preliminarily, in the same suit which seeks a consequent partition. (*Wilkin* v. *Wilkin*, 1 *John. Ch. Rep.* 117.) The statute relating to partition contemplates an amendment of the bill after trial and ascertainment of facts. (2 *R. S.* 320, § 20, 21, 79.) James T. Brady is a proper party under the first head of relief; because 1st, he is charged with unfairly procuring the will; and 2dly, he has control of the paper, which may be directed to be delivered up and cancelled. He is a proper party under the second head, as executor ; to answer the allegation that there are no personal assets to pay the $500 legacy. If he were omitted the devisees might demur. (*Ram on Assets*, 204. *Rhoades* v. *Rudge*, 1 *Sim.* 79. 7 *Paige*, 647.)

The complainant John A. McCosker had an undoubted right, as heir at law of Thomas McCosker, to file a bill of revivor. (*Spencer* v. *Wray*, 1 *Vernon*, 463.) But in so doing he could not have availed himself, in any degree, of the will of his father. (2 *Madd. Ch.* 402.) For in case his legitimacy was successfully questioned, his character of devisee would not avail to sustain his bill of revivor. A devisee cannot file a bill of revivor, or pray to revive the suit of his devisor. (*Douglass* v. *Sherman*, 2 *Paige*, 361. *Mitford*, 79, *sub.* 7, 8. *Story's Eq. Pl.* § 379, 380. *Mitf.* 71. 1 *Cas. in Chan.* 174.)

The original bill in the nature of a bill of revivor, differs from a bill of revivor in this, that it is purely a new suit; it never revives the proceedings in the first suit, but merely carries the benefit of them into the new case; and in practice it is marked with the following distinguishing traits : 1. A bill of revivor

states merely the prayer of the first bill, and the abatement. ( *Willis' Pl.* 145.) But the original bill in the nature of a bill of revivor reiterates in detail all the statements of the first bill; for the bill being a new suit, the complainant must show his title to the relief, as well as to the benefit of the former proceedings. ( *Willis' Pl.* 394, *and notes.*) 2. No order of revivor is ever made; but at the hearing of the second suit the circumstance of there being two suits instead of one, adds three lines to the decree. ( *Clare* v. *Wordell*, 2 *Vernon*, 548. *Id.* 672.)

In the present case John A. McCosker has filed the proper bill. 1. He cannot be, in judgment of law, both heir and devisee; nor could the fact of his being devisee be admitted by way of supplement, or otherwise, into a bill of revivor, to aid his case. 2. Even as heir at law, he may be permitted, in the discretion of the court, to waive the more simple remedy of a bill of revivor, and to prosecute his claim, by original bill in the nature of a bill of revivor; and where, as in this case, he shows that his evasive adversary disputes his heirship, evidently for delay and vexation, he offers a good reason to the court for filing a bill, of essentially the same character, and leading to the same consequences as a bill of revivor, in which his title by inheritance or by devise may both be presented. ( *Mitf.* 97, § 7.) 3. If the last proposition is erroneous, and an heir at law cannot, under any circumstances, be permitted to obtain the benefit of the existing suit of his ancestor except by bill, then the complainant has mistaken his remedy. But the demurrer, so far from objecting to the course adopted, supposes the bill to be a simple bill of revivor, and demurs for that cause. 4. It is not improper, except as an idle piece of repetition and surplusage, to reiterate, in the original bill in the nature of a bill of revivor, the facts stated in the first bill: for the second bill is in truth founded upon the facts stated in the original bill, and not like a bill of revivor, merely upon the first bill itself. 5. There seems greater difficulty in carrying the old suit into the new in this sort of bill, than in a pure bill of revivor; but it is only in the seeming. For just such a bill as the present would well lie in this case, if J. A. McCosker

was a devisee only; and in such case the difficulties in question would appear, to the same extent. (1 *P. Wms.* 266.)

The prayer of this bill is strictly right in omitting any prayer to revive. ( *Willis' Eq. Pl.* 394. *Van Heythuysen's Eq. Draughtsman,* 348.)

The averment that the facts stated in the original bill were true, is proper enough in an original bill; though not in a bill of revivor. 1. If the defendant had already answered them, he could very shortly say so in his answer to this bill. 2. If he had not answered them, twenty statements of the same fact, in the same words, are as easily answered as one statement.

If there are any technical defects which would render the bill demurrable, the defects are not reached by the present demurrer; and the most the court can do, is to modify the order by allowing a demurrer *ore tenus* for these causes, permitting the complainant to obviate such demurrer by amendment, and charging the defendants with all the costs of the demurrer and appeal. (3 *Paige,* 453. *Id.* 232. *Baker* v. *Mellish,* 11 *Ves.* 72. *Johnson* v. *Anthony,* 2 *Moll. Rep.* 373.)

THE CHANCELLOR. Neither the original bill, of Thomas McCosker, nor the bill in the present suit, is properly framed, to entitle the complainant to a partition of the lands in controversy, in case it should turn out that the alleged will of John McCosker the younger is valid. In both bills it is distinctly charged that the will is void; and that the whole title and interest in the lands became vested in T. McCosker, as heir at law of his 'her, as to one half, and as the heir of his brother as to the half thereof, upon the death of the latter. The prayer for therefore, in case the pretended will shall be found is wholly inconsistent with the case made by th         'f the complainant was ignorant whether the all         the defendants, was in fact valid or invalid, and wis         .btain the proper relief as that fact should ultimately appear to be, he should have framed the statements in his bill, as well as the prayer for relief, so as to present the case in a double aspect. That is, if he was in a situation to entitle him to one

McCosker *v.* Brady.

kind of relief, in this court, in case the alleged will was invalid and a cloud upon his title, and to another kind of relief here, by partition, in case the will was valid, and if the situation of the case was such that he could not ascertain the fact upon which his right to one kind of relief or the other depended except by a discovery from the defendants or by an issue of *devisavit vel non* to be awarded by this court, he should, instead of alleging that the will was void, have stated that he was ignorant whether it was valid or invalid; and should have showed that he was not in a situation to have that question settled by a suit at law. And he should then have prayed that the question might be set- tled under the direction of this court; and that he might have the relief to which he might be entitled, in the alternative. In ex- amining the question, therefore, whether the demurrers are well taken, the court must proceed upon the supposition that it will eventually be found that the allegations in this bill, that the will was invalid, are true; and that the same was procured to be exe- cuted by fraud, or undue influence exercised over John McCos- ker the younger, as stated in the original bill, and as reasserted in the bill of the present complainant.

In the case of *Colton* v. *Ross,* (2 *Paige's Rep.* 396,) it was decided that this court had no jurisdiction, and would not enter- tain a suit, to set aside a will of real estate, upon the ground that it was obtained by fraud, or that the alleged testator was incom- petent to make a will, where the complainant had a perfect remedy at law. But at the time of the filing of the original bill by T. McCosker, in the case under consideration, he had no such remedy at law. For, he was not then in possession of the premises in question, or of any part thereof. Nor was he enti- tled to the possession during the continuance of the trust term, of five years, created by the will of his father; which term had not then expired. So that he could not have sustained an action against the tenants, to recover the rents, or an ejectment suit against any one who was wrongfully in possession.

The trust to receive the rents and profits, and to pay the an- nuities to the two sons for the five years, if they should live so long, and to pay the surplus to John, was a valid trust under

the provisions of the revised statutes, and continued, notwithstanding the death of John, for the five years, or until it was terminated by the death of Thomas within the five years.   For if the trust was valid, the whole legal estate was vested in the trustees, so long as any of the valid purposes for which the trust was created continued ; and the cestuis que trust could take no estate in the lands during the continuance of the trust, (1 *R. S.* 729, § 60,) and the interest of the cestui que trust was inalienable in the mean time.   Although one of the trustees died, and the other two refused to accept the trust, the trust itself devolved upon this court, under the provisions of the revised statutes. (*King* v. *Donnelly*, 5 *Paige Rep.* 46.)   It was a proper case, then, for the complainant in the original bill to come into this court, upon which the trust had devolved, to have a receiver appointed to collect and preserve the rents and profits, and to have the question as to the invalidity of the will determined ; so that a proper decree might be made for the payment of the whole rents and profits, which might come into the hands of such receiver, to the complainant in that bill, as well as the annuity to which he was unquestionably entitled under the will of his father.   The original bill, therefore, appears to have been properly filed.   And if the complainant therein had not died, I think this court would have been authorized to direct an issue, to try the validity of the alleged will ; and if the same had been found to be invalid, a decree might have been made, declaring its invalidity, so that it should no longer remain a cloud upon the title.   The defendant J. T. Brady being charged with fraud and collusion in obtaining that will, in favor of an infant, who could not be properly charged with the costs of the proceedings to set it aside, appears also to have been a proper, though not a necessary party to the suit.   For, he might be personally charged with costs in case the complainant should succeed.   His demurrer to the whole of the original bill does not, therefore, appear to have been well taken.

The questions arising under the present bill are somewhat different.   At the time of filing this bill the trust term had expired by its own limitation, as well as by the accomplishment

of all the valid purposes for which that trust was created. And although the question yet remains to be litigated, as to who is entitled to the rents and profits of the premises up to the time of the death of the complainant in the original bill, which rents are still in the hands of the receiver, or of R. Martin the original agent, the present complainant is not in a situation to litigate that question in this suit. Those rents and profits are now personal property, and belong to the personal representative of the deceased complainant, and not to his heir or devisee. But if the alleged will of John McCosker the younger is invalid, as charged in the bill, the legal as well as the beneficial interest in the whole premises, subject to the unexpired term in the lease to Maas, is now in the complainant; and he is entitled to the whole rents and profits, in the hands of the receiver, which have accrued since the death of Thomas McCosker, in May, 1844. On the other hand, if the alleged will is valid, the defendants, J. R. Brady and his sister, are each entitled to one undivided fourth of the premises, and to the rents and profits thereof since that time; for their own use and benefit. For, although an annuity of $500 was, by the will, given to the brother for life, and to be continued to the present complainant, there appears to be nothing in that will which makes any of the legacies therein mentioned a charge, even by implication, upon the real estate devised to Brady and his sister.

If the original bill had been properly filed for a partition of the lands, it would be no objection to a bill filed by the devisee, to revive and continue the proceedings, that such devisee was an infant; and was therefore incapable of commencing an original suit for the partition of lands. For such a bill, filed by the devisee, although it is so far an original bill that the validity of the devise may be contested thereon, is in reality a bill to revive and continue the proceedings in the original suit. Under the 23d rule of this court, if the defendant in an original bill in the nature of a bill of revivor, or in an original bill in the nature of a bill of revivor and supplement, does not deny the validity of the devise upon which the right of the new complainant to revive and continue the original suit and to have the benefit

McCosker v. Brady.

of the proceedings therein, rests, such suit may be revived upon motion; without waiting to bring the new suit to hearing upon such new matter. And when the right of the devisee, to revive and continue the proceedings in the original suit, as the proper representative of the former complainant in such suit, is admitted, or has been established by a decree founded upon the new matter, the new complainant is entitled to the benefit of those proceedings, so far as his interest as devisee is concerned, to the same extent as he would have been if he had been in a situation to continue those proceedings by a simple bill of revivor. (*Mitf. Pl.* 70. *White on Rev. & Sup.* 127.)

When the original bill, in the present case, was filed by Thomas McCosker, the arrears of the annuity for $200, given to him for life by the will of his father, remained unpaid from the time of his brother's death. Those arrears, as well as the part of the annuity which became payable afterwards, belong, as before stated, to the personal representatives of the original complainant; and not to the present complainant, as the devisee of the real estate. The latter, therefore, has the right to revive and continue the proceedings so far only as concerns the real estate, and the rents and profits thereof which have accrued since the death of the original complainant; and to obtain such relief as he may be entitled to in his character of devisee merely. If the suit, therefore, is to be further prosecuted in reference to the settlement of the right to the rents and profits which had accrued previous to the abatement, it must be revived by, or in the name of, the executor or administrator of Thomas McCosker. (*Hoffman* v. *Treadwell,* 6 *Paige's Rep.* 308. *White on Rev. & Sup.* 81.) If the original bill, however, was properly filed, for the purpose of having the question as to the invalidity of the pretended will of John McCosker the younger, settled under the direction of this court, there is nothing to deprive the devisee of the right to continue the suit for that purpose; although the existence of the trust term is now removed, and this complainant would probably have the right to file a new original bill for relief. For, considering the situation of the property, I do not see how he can institute any proceedings, at law, by which the

McCosker *v.* Brady.

invalidity of the pretended will can be established, so as to give him all his rights. The abatement of the suit did not discharge the receiver who had been previously appointed. (3 *Dan. Ch. Pr.* 225. 1 *Hogan's Rep.* 174.) No person, therefore, was in possession, against whom the present complainant could have brought a suit at law to try the legal title to the lands. Nor could any suit at law have been brought in which he could have recovered the rents, which had accrued subsequent to the death of the original complainant, either from the receiver himself, or from the tenants who had been directed to attorn to such receiver and pay their rents to him.

The form of the present bill appears to be right, with the single exception that it does not, in terms, pray that the original suit may be revived. (*See White on Rev. & Sup.* 129, 130.) But the frame of the prayer is such as clearly to indicate that the bill was intended to be filed as an original bill in the nature of a bill of revivor. For the complainant distinctly prays that he may have the benefit and advantage of the proceedings in the original suit; and the bill also contains a general prayer, for such other or different relief as the complainant may be entitled to, upon the case made by his bill. This mere technical defect in form, therefore, which is not alluded to in either of the demurrers, cannot avail the defendants anything. The objection that the complainant prays for an account of rents accrued previous to the abatement, if the bill does in fact contain such a prayer, formed no ground for a demurrer to the whole bill. And as the bill contains no allegations, or statements, which will entitle the complainant to a decree for a partition in this suit, in any event, the mere prayer for a partition, in an event contemplated by such prayer only, does not render the bill multifarious. (*See Many* v. *Beekman Iron Company,* 9 *Paige's Rep.* 194.)

The decision of the vice chancellor in overruling the demurrer as to each defendant, must therefore be affirmed, with costs; to be paid by the appellants, respectively, upon their several appeals.