# Lehman *et al. v.* Meyer *et al.*

*Bill in Equity by Simple Contract Creditors to reach Property Fraudulently Conveyed by Debtors.*

1. *Error not noticed unless assigned.*—Error apparent on the record, but not assigned, is not noticed unless it be a want of jurisdiction over the subject-matter in the primary court, which compels a reversal, and except under special circumstances, without remanding the case.

2. *Same; when presumed to be waived.*—All errors, except a want of jurisdiction, may be, and are presumed to be, waived, if they are not assigned, and in civil cases, the court may, in its discretion, refuse to notice errors assigned, but not insisted on in argument.

3. *Creditors at large; had no relief in equity against debtors' fraudulent transfers.*—Before the passage of the statute (Code, § 3886) equity would not interfere to relieve creditors at large against fraudulent transfers made by debtors, until they had reduced their claims to judgment.

4. *Judgment creditors ; when relief granted to in equity against debtors' fraudulent conveyance.*—Equity would assist judgment creditors in obtaining satisfaction in two classes of cases : 1. When the debtor fraudulently conveyed property on which the judgment was a lien. 2. To reach property not subject to execution at law; but in the second class the creditor must, before resorting to equity, have exhausted his legal remedies, while in the first class he need not have done so.

5. *Decedent; equity grants relief to creditors against fraudulent transfers made during life.*—Equity would also interfere for the relief of creditors who had not reduced their claims to judgment, or exhausted legal remedies, where a debtor had made fraudulent transfers of his property in his life time, and the remain-

[Lehman et al. v. Meyer et al.]

ing assets were insufficient for the payment of his debts. But this jurisdiction depends on the power of the court to marshal the assets of deceased persons, and was independent of the jurisdiction to which the creditors of a living man could resort.

6. *Simple contract creditors; statute extending relief to, against fraudulent transfers by debtor construed.*—The statute (Code, § 3886) allowing creditors without a lien to go into equity to reach property fraudulently transferred by debtors, is remedial, and must be construed in the light of the pre-existing law, and given effect according to the legislative intention; thus reading and construing it, simple contract creditors have the same right under it, as judgment creditors would have had before its enactment, to invoke the aid of equity to reach property fraudulently transferred.

7. *Property fraudulently conveyed may be pursued in equity by creditors, although the creditor has other property.*—Although it may appear on a bill filed by simple contract creditors to reach property fraudulently conveyed by the debtor, that the latter has other property sufficient to pay the debt, yet the creditor may pursue such property, and the fraudulent grantees can not compel a marshaling of the assets, so as to relieve the property not conveyed before charging the property claimed by them.

8. *Double aspect; bills may be framed with.*—Bills in equity may be framed in a double aspect when each alternative would be the foundation for the same relief ; but two inconsistent, repugnant claims to relief, founded on different states of fact, and each, if true, entitling the complainant to relief of a wholly different character, cannot be asserted in the same bill.

9. *Bill seeking to set aside mortgage as fraudulent, or to have it declared a general assignment, demurrable.*—A bill praying that if a mortgage of property by the debtor be not found fraudulent, it may be held to operate as a general assignment, enuring to the benefit of all the creditors of the grantor equally, is demurrable.

10. *Case overruled.*—The case of *Crawford v. Kirksey,* 50 Ala. 590, which asserts the converse of the proposition stated above, is overruled.

11. *Creditor's bill ; when not demurrable, though praying that mortgage may be held fraudulent, or held to operate as a general assignment.*— A creditor's bill seeking to declare a conveyance fraudulent and void, which prays that if it should be found fraudulent, it may be held to operate as a general assignment, without stating any facts which would authorize this relief, is not demurrable.

12. *Distinct matters ; must not be conjoined in bills.*—That a bill should not join distinct or independent matters, or defendants, against whom the complainant may have distinct and independent demands, is a general rule; but when a demurrer should be sustained on either of these grounds, is matter of doubt, and it is impossible, from our decisions, to state a rule which will apply to the varying exigencies of particular cases—this must be determined alone by reference to the averments and prayer of the bill.

13. *Creditor's bills ; defendants to, may be persons who hold property under several distinct conveyances.*—In creditors' bills, persons holding portions of the debtor's property, under separate and distinct conveyances, may be joined as defendants. The object of the bill is single, the satisfaction of the debt out of the debtor's property; and when such a bill charges specifically that the defendants entered into a combination to defraud complainants, and that several transactions, against which relief is sought, were but parts of the same plan and scheme, in which all the defendants joined, and under which the debtor conveyed his property by separate mortgages to different persons, it is not subject to demurrer.

14. *Chancellor's decree prima facie correct ; error must be shown.*—When, in a creditor's bill, the evidence is conflicting as to fraud in the conveyances which are sought to be set aside on that ground, the decree of the Chancellor declaring such conveyances fraudulent, is presumed to be correct, until the party assailing it repels this presumption; and it will not be disturbed when, as in this case, this court is not satisfied that his decree was erroneous.

APPEAL from Dallas Chancery Court.

Heard before Hon. CHARLES TURNER.

This was a bill in equity, filed December 14, 1878, by M. Meyer and S. Sterne, partners, under the firm name of M. Meyer & Co., and several others, against Solomon Lehman and S. Kahn, partners, trading under the name of Lehman & Kahn, and Edward Kahn and Alexander Katzenberg, trading under the name of Ed. Kahn & Co., and Hardy Hirschler. It is alleged in the bill that said Alexander Kahn, and said Katzenberg became indebted to the complainants in the summer and fall of 1877, in certain specified sums for goods sold and delivered to them ; that on Nov. 30, 1878, Ed. Kahn & Co., made a promissory note for $3,466.77, payable to S. Lehman Nov. 1, 1879, and executed on the same day a mortgage on all their stock of goods in the store where they carried on business in Camden, Wilcox county, stipulating therein, that they should be allowed to go on as merchants and sell the goods in the usual mercantile way ; that on the same day Ed. Kahn made a promissory note for $1,760, payable to Nathan Kahn, Nov. 1. 1879, and executed a mortgage on the same stock of goods to secure it, which mortgage also contained the same stipulations as to selling as the other one ; that both mortgages were delivered for registration to the judge of probate of Wilcox county ; that these mortgages were prepared in carrying out a fraudulent conspiracy formed by said Lehman, N. Kahn, E. Kahn, and said Katzenberg, to hinder, delay and defraud complainants, and the other creditors of Ed. Kahn & Co. ; that said Lehman and N. Kahn, about Nov. 1, 1876, sent one Hoffman to Oxford, Ala., with a stock of goods, and began, through him, a mercantile business there, but about July 7, 1877, sold said goods to Hoffman and Hardy Hirschler for $1,300, of which six hundred dollars was paid in cash ; that Hoffman & Hirschler continued to buy goods from Lehman & Kahn, and bought from no one else ; that said firm of Hoffman & Hirschler did not, at any time, up to April 1, 1878, owe Lehman & Kahn less than about $3,000 ; that in August, 1877, Lehman & Kahn instructed Hirschler & Hoffman to remit them no more money until further instructions, and about two weeks afterwards instructed them to remit all the money they had on hand to Mrs. Hirschler, the mother of Hardy Hirschler, in the care of Lehman & Kahn. Hoffman & Hirschler sent about $800 to Mrs. Hirschler. In the fall of 1877 Lehman & Kahn filed their petitions in bankruptcy, as the bill avers, fraudulently omitting from their schedules of assets, the indebtedness of Hoffman & Hirschler to them ; that Lehman & Kahn afterwards obtained their discharge, and in April, 1878, by agreement, took the stock of goods still in the hands of Hoffman & Hirschler, in satisfaction of the amount

due them ; that said stock of goods was shipped back to Selma, and Lehman (Nathan Kahn having sold out his interest to him), used it as a nucleus to begin business with ; Hardy Hirschler, who was a cousin of Lehman, being thus left without means, went to Wilcox county, and formed some sort of business connection with Ed. Kahn & Katzenberg, and established a store near Camden—the purpose of Ed. Kahn & Co. being to buy goods on credit, and secretly place them in the hands of Hirschler under a simulated sale to him, and thus defraud their present and future creditors ; that in pursuance of this plan Ed. Kahn & Co. purchased of complainants goods to the amounts stated in the bill, and had secretly sent many of them, and also other goods, to said Hardy Hirschler, who now held possession of them under a secret agreement to hinder, delay, and defraud complainants ; that in further pursuance of this plan, Ed. Kahn & Co. prepared the promissory notes and executed this mortgage to Lehman & Kahn, embracing all the property subject to the payment of debts, which they owned, except the goods in the hands of Hirschler. That shortly after the making of the notes and mortgages, Ed. Kahn & Katzenberg pretended to dissolve partnership, or connection with said Hirschler, and to have sold to him their interest in the goods in his hands, which were of considerable value ; that Ed. Kahn & Katzenberg were insolvent at the time these purchases were made from complainants, and when the note and mortgages were made to Lehman & Kahn, who knew this fact ; that Kahn & Company were rapidly selling off their goods, and those in the store of Hirschler were also rapidly disappearing. The bill prayed that the mortgages be set aside and declared fraudulent and void, and the property therein conveyed be subjected to the payment of the debts due complainants ; that a receiver be appointed to take charge of the goods of Ed. Kahn & Co., and those also in possession of Hirschler ; that if the mortgages should be held valid, that they may be declared to operate as a general assignment enuring to the benefit of all the creditors of Ed. Kahn & Co. The defendants demurred to the bill on the following grounds : 1. That under the allegations of the bill the complainants have an adequate remedy at law. 2. Because the bill shows that Ed. Kahn & Co. had other property of greater value than the amount of the debts due complainants. 3. Because the bill seeks to have the mortgages therein described declared fraudulent and void, and yet prays that they may be held to operate as a general assignment. 4. That the bill fails to show that Lehman & Kahn had any interest in the property transferred to Hirschler by Kahn & Co., or took any part in

the transaction between Hirschler and Ed. Kahn & Co., or that Hirschler had any interest in the business of Lehman & Kahn, or that Hirschler participated in any design to hinder, delay, or defraud complainants or the creditors of Ed. Kahn & Co. The Chancellor overruled the demurrer, and denied a motion to dismiss the bill for want of equity. He also made an order, after hearing a motion for that purpose, on affidavits, appointing a receiver to take charge of the stock of goods, and other assets of Ed. Kahn & Co., which were in their store in Camden, Alabama, where they carried on business, and also all the goods and other assets at the store near Camden, "where Ed. Kahn, Alexander Katzenberg, and Hardy Hirschler, lately carried on business." The testimony on the question of fraud, *vel non*, was voluminous and conflicting, but no statement of it need be given, as the conclusion reached by the Chancellor, and sustained by the court on appeal, was that the case made by the bill had been substantially proven. The Chancellor decreed that the mortgages described in the bill were fraudulent and void, and subjected the property conveyed by them, and that attempted to be transferred to Hirschler, to the payment of the debts due complainants. The errors assigned are: 1. The decree overruling the demurrer to the bill. 2. The decree denying the motion to dismiss for want of equity. 3. The final decree in the cause.

Jos. F. JOHNSTON, and E. W. PETTUS, for appellants.

BROOKS & ROY, and WHITE & WHITE, for appellees.

BRICKELL, C. J.—It is not the practice to notice any errors apparent on the record which are not assigned, unless it be a want of jurisdiction of the subject-matter in the primary court, necessitating in any event, a reversal of the judgment or decree, and which would not, except under special circumstances, if there was an absence of jurisdiction, be followed by remanding the cause. All other errors may be waived, and the waiver is presumed, if there is an omission to assign them.—*McDaniel v. Moody*, 3 Stew. 314; *Evans v. St. John*, 9 Port. 186. And in civil causes, it is within the discretion of the court whether it will notice errors assigned, but not insisted upon in argument.—1 Brick. Dig. 102, § 285. No one of the assignments of error require that the court should consider whether the receivership is not broader than is warranted by the averments of the bill, drawing into the custody of the court, property which could not by the court in this bill properly be subjected to the payment of the de-

[Lehman et al. v. Meyer et al.]

mands of the complainants, who stand only as simple contract creditors. Without approving or disapproving the
authority conferred upon the receiver, we pass to a consideration of the errors assigned. The first of these refer to the
decree overruling the demurrers to the bill, and the motion
to dismiss it for want of equity.

As we have said, the complainants are simple contract
creditors, who have not reduced their demands to judgments
at law, and the object of the bill is to reach personal property
subject to levy and sale under execution at law, upon allegations that it has been by their debtors transferred with the
intent to hinder, delay, and defraud them. A court of equity,
in the exercise of its original jurisdiction, would not intervene
to relieve simple contract creditors, or creditors at large, (for
so they are indifferently termed), until they reduced their
demands to judgments at law. Until then the creditor had
not established the justness of his demand, and that he really
was a creditor, with a right to inquire into the fairness and
validity of the dispositions of property the debtor may have
made. Unless, as it was justly said, he had a certain claim
upon the property of the debtor, he had no concern with his
frauds.— *Wiggins v. Armstrong*, 2 Johns. Ch. 144 ; *Brinkerhoff
v. Brown*, 4 Johns. Ch. 671 ; *Reese v. Bradford*, 13 Ala. 837 ;
*Sanders v. Watson*, 14 Ala. 198. Having obtained judgment
and execution at law, there were two classes of cases in which
a court of equity would intervene to assist the creditor in
obtaining satisfaction. The first was, when there was a
fraudulent conveyance or transfer of property, upon which
the judgment, or the execution, would operate a lien. Under the statutes formerly existing, the judgment, from the
day of its rendition, was a lien on lands coextensive with the
State, and the execution on goods and chattels within the
county to which it was issued, from the day of its delivery
to the sheriff. In this class of cases, without waiting until
there was a return of execution, *no property found*, the court
would aid the creditor by removing the transfer, or conveyance, fraudulently or inequitably interposed, obstructing or
embarrassing the fair and complete execution of the process
at law. The other class of cases, was, when the creditor
sought the assistance of the court to reach assets not subject
to execution at law. In this class of cases, the court would
not interfere until the creditor had exhausted his legal remedies—had execution returned *no property found*, for until then,
it could not be known the remedy at law was inadequate.
*Kirkman v. Vanleer*, 7 Ala. 217 ; *Dorgan v. Waring*, 11 Ala.
988 ; *Williams v. Brown*, 4 Johns. Ch. 682 ; *McDermott v.
Strong*, Ib. 687 ; *Beck v. Burdett*, 1 Paige 305. There was

another class of cases dependent upon the jurisdiction of the court over the administration and marshaling of the estate of deceased persons, in which the court was accustomed to intervene for the relief of creditors, though judgments at law had not been obtained and legal remedies had not been exhausted, if a necessity existed; and the necessity existed, when there was a deficiency of other assets for the payment of debts. This class of cases embraced fraudulent alienations made by the debtor in his life, and depended upon a jurisdiction of the court, distinct and independent of that to which the creditor of a living man could resort.—*Pharis v. Leachman*, 20 Ala. 662; *Watts v. Gayle, Ib.* 817; *State Bank v. Ellis*, 30 Ala. 478; *Quarles v. Grigsby*, 31 Ala. 172; *Saltmarsh v. Smith*, 32 Ala. 404; *Todd v. Neal*, 49 Ala. 266; *Halfman v. Ellison*, 51 Ala. 543.

In the two classes of cases to which we have just referred, the law was regarded as defective; and there have been several statutes enacted with a view to cure the mischief. The one now material, and upon which the jurisdiction of the court must depend, reads as follows: "A creditor without a lien may file a bill in Chancery to subject to the payment of his debt any property which has been fraudulently transferred, or attempted to be fraudulently conveyed, by his debtor."—Code of 1876, § 3886. The statute is remedial—its manifest purpose is to enlarge the jurisdiction of the court of chancery, and to afford creditors a remedy for the redress of injuries to them, which they had not under existing laws. Without entering upon, or invoking, that vague, undefined, and indefinable doctrine of construing remedial statutes largely and beneficially, it is enough to say, that the construction it must receive must give it effect, according to the legislative intention. The legislative intention must be collected from its words, and these words must be read in the light of, and in connection with, the pre-existing laws. Reading and construing them in the light of, and in connection with, pre-existing law, we can not doubt that the intention of the legislature was to draw simple contract creditors, or creditors at large, creditors who had not reduced their demands to judgments at law, within the jurisdiction courts of equity originally exercised for the assistance and relief of judgment creditors only. In other words, when the debtor by a fraudulent transfer or conveyance had offended the rights of all creditors, whether judgment creditors, or creditors at large, that all should have in equity the same right to invoke its removal. It may be supposed the term *creditor without a lien,* employed in the statute, is rather indefinite, and was intended as an expression that the creditor at large should

resort to equity only when, if he had a lien, he could invoke the aid of the court for its enforcement. But the real meaning of the statute is, that a simple contract creditor, or a creditor at large, not having a lien by operation of law, shall have an equal right with a creditor having such lien, through the aid of a court of equity, to reach property subject to the payment of debts, which has been fraudulently transferred. *Evans v. Welch*, 63 Ala. 250. Property subject to levy and sale, upon which a judgment, or execution at law, would operate a lien, may be reached. So may property not subject to execution at law, on which the lien of the judgment or execution would not operate, and which the judgment creditor could not reach until there was an exhaustion of legal remedies. The real purpose of the statute is to dispense with, and to abrogate wholly, the pre-existing law, which required that there should be a judgment at law, or if a judgment and the assets transferred fraudulently, were not subject to execution, that there should be an exhaustion of legal remedies, before the court would intervene to avoid fraudulent transfers and conveyances. That rule is blotted out, and any creditor may now, and has an equity of right to, invoke the assistance of the court to avoid such transfers or conveyances. The present bill, consequently, in its several parts, or rather so far as it seeks to avoid the mortgages, and the transfer to Hirschler, whether that transfer was in writing, or rests merely in parol, contains equity. These mortgages and the transfer are averred, with a statement of numerous facts and circumstances, in support of the averment, to have been but parts of a general plan and scheme of the debtors to hinder, delay, and defraud their creditors.

It may appear from the bill that the debtors had property other than that transferred or conveyed by the mortgages of value sufficient to pay the debts of the complainants. If that be so, it is not a reason for arresting them in the pursuit of property the debtors have transferred or conveyed with intent to defraud them. Nor have the fraudulent transferrees or grantees any equity to compel a marshaling of the assets, and the exhaustion of such as were not transferred or conveyed before charging the property claimed by them.

Bills in equity may be framed in the alternative, or as it is usually expressed, with a double aspect. But by this it is not intended that a complainant can introduce into the bill, too inconsistent, repugnant claims to relief founded on different states of fact, and each, if true, entitling him to relief of a wholly different character. Each alternative must be the foundation for precisely the same relief.—*Micou v. Ashurst*, 55 Ala. 607 ; *Shields v. Barrow*, 17 How. U. S. 130 ; *Rives v.*

[Lehman et al. v. Meyer et al.]

*Walthall*, 38 Ala. 329; 1 Dan. Ch. Pr. 385. A complainant cannot assert a will to be invalid, claim that the court, in cases of which the court has jurisdiction, shall declare it void, or, if that be not true, that there may be under a decree of the court partition of lands devised to him and others jointly. *McCosker v. Brady*, 1 Barb. Ch. 329. It is, too, an established doctrine of a court of equity, that when a party sets up a case of actual fraud, making that the primary ground of relief, he cannot entitle himself to a decree by proof of facts which, independent of fraud, may create a case in which relief would be granted.—1 Dan. Ch. Pr. 328. If, by the statements of the bill, it was shown that the mortgages and transfers covered substantially all of the property of the debtor, and that the transfer to Hirschler was a security for a debt, and not an absolute sale, and affirmed the validity of these transactions, followed by the alternative prayer, that if they were not found fraudulent, they should be declared to operate as a general assignment enuring to the equal benefit of all creditors, the bill would be subject to demurrer. It would present independent, inconsistent, repugnant titles to relief; and if it were confessed, it would be mere matter of speculation and conjecture with the court, as to which of the titles should be made the foundation of relief. We are aware that in *Crawford v. Kirksey*, 50 Ala. 590, it was held that a creditor's bill could be filed in the alternative—in one aspect assailing conveyances as fraudulent, and in another, asserting their validity, and that they constituted a general assignment enuring to the equal benefit of all creditors. We feel constrained to depart from, and to overrule that case upon this point. But this bill, though there is a special prayer that the mortgages, if not found fraudulent, may be declared to operate a general assignment (and the prayer is confined to the mortgage alone, not extending to the transfer to Hirschler), does not aver facts which would authorize that relief. The prayer is, therefore, merely impertinent, could not be made the basis of relief, and does not render the bill demurrable.—*Rives v. Walthall, supra.*

The rule is general, that a bill should not join distinct and independent matters, or defendants against whom the complainant may have distinct and unconnected demands. When a bill will be subject to demurrer on either of these grounds, is a question of unmixed doubt and difficulty, on authority. It seems most generally to have been decided upon considerations of convenience, in view of the facts of the particular case, rather than in obedience to any fixed, invariable rule. 1 Dan. Ch. Pr. 335 *et seq.*, and notes. From our own decisions, it is simply impossible to collect a general rule which

[Lehman et al. v. Meyer et al.]

could be made applicable to the varying circumstances of particular cases. In some cases the court seem to have insisted rigidly upon a rule that would exclude the union in one bill of matters not having a direct, immediate connection, in all of which the defendants had not a common interest. In others, they seem to have considered only what was just and convenient in the particular case, while avoiding a multiplicity of suits, also avoiding compelling defendants into litigation of matters in which they had no interest, embarrassing them in defense of the matters in which they are interested.—1 Brick. Dig. 619, §§ 1158–1200. Whether a bill is in this respect demurrable, or subject to objection by plea, or answer, must be determined by reference alone to its averments and prayer.—*Halsted v. Sheppard*, 23 Ala. 558; *Hardin v. Swoope*, 47 Ala. 273.

The bill before us, with specific averments, charges the defendants with a confederation to defraud the creditors of E. Kahn & Co., and that the several transactions against which relief is sought, were but parts of the plan and scheme in which all joined. Its purpose is to obtain satisfaction of the debts of the complainants from the property the debtors had by separate mortgages conveyed to Lehman, and to Nathan Kahn, and by separate transfer to Hirschler. In bills of this kind by creditors, it is common practice, sanctioned for a long time by the courts, to join as defendants persons holding different portions of the debtor's property under separate and distinct conveyances. The object and purpose of the suit is single, the satisfaction of the demands of the creditors from the property of the debtor, and all that can be said is, that different persons have, or claim to have, separate interests in distinct or independent questions connected with, or springing out of that common purpose.—*Brinkerhoff v. Brown*, 4 Johns. Ch. 671; *Boyd v. Hoyt*, 5 Paige, 78; 1 Dan. Ch. Pr. 339, note 1. We are not of the opinion the Chancellor was in error in overruling the demurrers, or the motion to dismiss the bill for want of equity.

Whether there is error in the final decree rendered by the Chancellor granting relief to the complainants, depends wholly upon the evidence, whether the frauds averred were proved. The evidence, in some respects conflicting, as is to be expected in all cases of this character, it is apparent from the opinion of the Chancellor, was very carefully, thoughtfully, and deliberately examined, and considered. The conclusion reached by him must be here accepted as *prima facie* correct; and whoever assails it must be prepared to repel the presumption of correctness attaching to it alike as to matters of law, and of fact. We are not satisfied that his

[Lee v. Lee.]

conclusions are erroneous, and unless we are satisfied of error, they must stand.—*Rather v. Young,* 56 Ala. 94.

The result is, the decree must be affirmed.