Chief Justice Robertson
delivered the Opinion of the Court.
Tilford and Anderson having sued one Ewell on two promissory notes for about six hundred dollars, the attorney'who prosecuted their actions agreed to institute and prosecute an action, also, for Thompson Burnham, on a note he held on Ewell, for about eight hundred dollars; but, as he doubted whether he could make both debts, he undertook for Burnham, on the express condition that, in the event of a conflict of interest, Tilford and Anderson should be preferred, and be entitled to priority.
Accordingly, judgments having been obtained for both parties at the same term, but for Tilford and Anderson first, the attorney caused executions of fieri facias to be issued on all of them, and delivered first to the sheriff those in favor of Tilford and Anderson, who returned “ no property ” on all of them.
Immediately after that return, the attorney proposed to an agent of Tilford and Anderson to unite with Burn-ham in a common effort, for the joint benefit of all, to subject some lands which Ewell had conveyed to an infant son and others, for the purpose of defrauding his creditors, as the attorney suspected. But the agent, without making any direct response to the proposition, procured other executions in favor of his constituents, but, before he had delivered them to the sheriff, the attorney caused to be issued an execution in favor of Burn-ham, and succeeded in putting it into the hands of the sheriff about four hours before those in favor of Tilford and Anderson had been delivered to him.
Afterwards, and before a levy of any one of the executions, Tilford and Anderson filed a bill in chancery for setting aside the conveyances of Ewell’s lands, as *110 fraudulent, subjecting them to the satisfaction of their judgments, and enjoining any sale of them until their bill should be finally disposed of.
A suit in chancery,*» rem, being instituted to sub ■ jeet land fraudulently conveyed to thesatisfaction of a judg’t, the lis pendens is an equitable levy , and secures a pri ority of lien to the eomp’t.
A party who, by petition,seeks to be preferred, in a suit to subject land fraudulently conveyed to the payment of the grantor’s debts, but who neither impeaches the conveyance nor attempts to proceed in rem, acquires no lien by the lis pendens. Nor can he, as the assignee of notes given asthe apparent consideration of the fraudulent deed, have tbose-notes satisfied out of the land in preference to a bona fide creditor who has filed his bill to set aside the conveyance. If the assignment was made bona fide, upon avalúa bleconsideration, that fact would be entitled to its influence in the question whether the deed was frau dulent or not.
*110 Burnham, who was not made a defendant by the bill, filed a petition .praying to be permitted to become a party, and insisting that, if the lands should be subjected, he should be preferred in consequence of what he considered a legal priority. But, though he filed his petition in the nature of a cross-bill against Tilford and Anderson and Ewell and his alienees, he did not allege that Ewell’s conveyances were fraudulent, nor ask for a decree for vacating them, but only prayed that, if (on the original bill, as we understand,) the Court should decide that they were fraudulent, his debt should be paid first, and that, if they should not be declared fraudulent, the Court would decree to him, against the alienees, the payment of two promissory notes for four hundred dollars each, assigned to him by Ewell, and given by those alienees, as a part of the ostensible consideration for the conveyances.
The Court having afterwards set aside the conveyances, and decreed the sale of the lands, Burnham brought suits at law on the two assigned notes, and failed in consequence of the decree.
Tilford and Anderson having bought the lands for six hundred dollars, under the decree, the Circuit Judge, on the final hearing of the case, decreed that they should pay to Burnham that entire sum, on the ground that, in the opinion of the Judge, Burnham had the prior legal lien, and, moreover, had an equitable lien arising from the assigned notes.
Tilford and Anderson now ask a reversal of that decree.
The technical priority of legal lien acquired by Burn-ham’s second execution, cannot be considered as meritorious in a court of conscience or of enlightened justice. The mode of acquiring it deprived it of all grace. It was the offspring of violated contract, and was conceived with the inequitable purpose of overreaching the prior right of Tilford and Anderson arising in law from their first execution, and in equity from the very agreement *111 with the mutual counsel of the parties, in consequence of which he had obtained for Burnham his judgment.
The only reason assigned for attempting such an unreasonable advantage, is, that the unprofessional agent of Tilford and Anderson was trying to do injustice by obtaining a second execution, so as to continue their legal priority. But how that could have been deemed unjust, we cannot conceive.
• But moreover, as between judgment creditors, it is not the first delivery of execution to the sheriff, but the first levy on property of the common debtor, which gives priority of legal lien. And when Tilford and Anderson brought their suit in rem, the lis pendens was an equitable levy, and entitled them do priority; for Burnham not only never had his execution levied, but did not acquire any equitable lien by seeking to set aside the fraudulent conveyances. He neither assailed those conveyances for fraud, nor sought a decree in rem. He seemed to prefer neutrality, and to look with indifference on the contest which Tilford and Anderson commenced and prosecuted alone against Ewell and his alienees. And his forbearance seemed to be studied and calculating; for if Tilford and Anderson had failed in the object of their bill, he was secured by the assigned notes, which were available only in the event of such failure; but, if the assailants of the conveyances succeeded, he reposed on his supposed first lien acquired by his last execution, which, in his judgment, had become first in dignity, but the priority of which he lost by never having it levied, when, notwithstanding the injunction, to which neither he nor the sheriff was a party, he might have levied it on the lands, had he not preferred the assigned notes to' his chances in attack on the conveyances.
These simple facts will not allow us to doubt that Til-ford and Anderson are justly-entitled to the whole of the sum which they succeeded in making out of the lands; unless the assigned notes should entitle Burnham to some prior equity, which we have not been able to detect. The ostensible contract, in consideration of which those notes had been given, having been set aside by Tilford and Anderson, for a fraud in fact attempted *112 against them by the parties to it, neither of the parties could have been entitled to any equitable lien on any of the land, as against the creditors who had been defrauded. And we cannot perceive how Burnham can occupy a better position than that of either the apparent obli-gors, or his assignor. The fact-of the assignment to him, if made bona fide, for paying the debt due to him, might have been entitled to influence on the question of fraud in the conveyances. But he took the notes subject to that question, whenever it should be raised by a creditor of Ewell, and subject, of course, to the right of any such creditor if he should nullify the pretended contract.
If the conveyances were not made in good faith for securing Burnham’s debt, the notes were deposited with Ewell’s agent for only a colorable purpose of sending them to Burnham, who never appeared in fact to have considered them as a substitute for his own note on Ewell, or even as an available collateral security therefor given to him by Ewell in good faith.
Wherefore, it seems to us, that Tilford and Anderson are entitled, in equity, to be paid first, as far as the proceeds of the sale of the lands subjected to sale and bought by themselves, will be sufficient to pay them.
Wherefore, the decree of the Circuit Court is reversed, and the cause remanded, with instructions to render a decree according to this opinion.