[Mathews v. Mobile Mutual Insurance Company.]

# Mathews *v.* Mobile Mutual Insurance Company.

*Bill in Equity by Creditor to have Conveyance of Land set aside as Fraudulent.*

1. *Writs of fieri facias from probate court; lien of equal to that of those issued by other courts.*—The lien of writs of *fieri facias* issued from the probate court is equal to, and not different from that of those issued by common-law courts.

2. *Lien of execution; extent of.*—The lien of an execution operates upon and binds, not only the property subject to its mandate, which is in the possession of the defendant, or the title to which stands in his name, but also property, with the title to which he has parted for the purpose of hindering, delaying and defrauding his creditors, unless it has been conveyed by the grantee having possession to a *bona fide* purchaser for a valuable consideration, and without notice.

3. *Same; when not lost.*—The lien of an execution, so long as it is kept alive, can not be defeated or impaired by the activity of creditors acquiring a junior lien; nor is it lost by mere passiveness, by mere neglect to force a levy and sale; but there must be culpable *laches* or fraud on the part of the creditor to work its loss.

4. *Fraudulent conveyances; intervention of court of equity in aid of creditors.*—At common law, independent of statute, a court of equity would intervene in aid of a creditor who had obtained judgment and execution at law, to remove fraudulent transfers or conveyances of property upon which the judgment or execution operated a lien; and also, on a return of execution "no property found," to reach and subject assets not subject to execution at law.

5. *Same; effect of filing of bill on priority of liens.*—Where the purpose of the suit is to reach equitable assets, the filing of the bill, being in the nature of an equitable levy, creates a lien on the assets sought to be subjected, which is prior to, and prevails against the demands of creditors subsequently coming in, though they are senior judgment creditors, and, at law, may have a priority of right to satisfaction from legal assets; but where the aid of the court is sought to subject property on which there is an execution lien, the filing of the bill, not being the creation of a new or other lien, but, like a levy, merely individualizing and rendering the general lien of the execution specific as to the particular property sought to be subjected, does not disturb the priority of liens theretofore existing on the property.

6. *Same; filing bill does not displace lien of judgment creditor under execution.*—A simple contract creditor, proceeding under the statute in a court of equity to have vacated and set aside fraudulent conveyances or transfers of property subject to execution at law, does not thereby acquire a preference over a judgment creditor who has a prior lien under an execution duly issued, and in the hands of the sheriff at the time of the filing of the bill.

7. *Court of equity, dealing with legal rights, follows rules of law.*—A court of equity, in dealing with legal rights, adopts and follows the rules of law, in all cases to which those rules are applicable; and whenever there is a direct rule of law governing the case in all its circumstances,

[Mathews v. Mobile Mutual Insurance Company.]

the court is as much bound by it as would be a court of law, if the controversy was there pending.

APPEAL from Wilcox Chancery Court.

Heard before Hon. N. S. GRAHAM.

This was a bill in equity, exhibited, on 7th February, 1880, by the Mobile Mutual Insurance Company, a body corporate, and a simple contract creditor of William T. Mathews, sr., against the said Mathews and others, for the purpose of having vacated and set aside, as fraudulent and void, a conveyance of land, executed by the said Mathews to his son, William T. Mathews, jr., in trust for the grantor's wife, on 10th December, 1875, and other conveyances of the same land, subsequently executed; and of subjecting the land conveyed to the payment of complainant's demand. To the bill as amended Josiah Robbins, individually and as guardian of Jesse S. and Osborne D. Steele, and R. H. Dawson, as guardian of David A. Steele, were made parties defendant, as "claiming or pretending to have liens in favor of their respective wards" upon said land. It is averred, on information and belief, "that the said Robbins and Dawson say that, in 1876, decrees were rendered by the probate court of Wilcox county against the said Mathews, sr., on the final settlement of his guardianship of the said Jesse S., Osborne D. and David A. Steele, in favor of the said Dawson and Robbins as their respective guardians; and which decrees remaining unsatisfied, they allege that executions were thereupon regularly issued from December 7th, 1876, until the present time, without the lapse of an entire term; and that said executions were returned by the sheriff of Wilcox county 'no property found.' Said Robbins further claims to be the owner of the decree in favor of the said Dawson, as guardian of the said David A. Steele, a minor, alleging that he has paid up the same to said Dawson, as guardian, and received from him a transfer and assignment thereof, but controlling the same in the name of the said Dawson." It is denied that either the said Robbins or Dawson has "any such lien as is claimed by them, growing out of said decrees and the proceedings had thereon." It is also averred that "whatever interest or claim or lien the said judgment creditors may have acquired by reason of the proceedings hereinbefore set forth, such interest, claim or lien is subordinate to that which has accrued to your orators by the filing of this bill, and the service of process thereunder, before any action was taken by the said Robbins and Dawson upon their said executions, other than causing them to be issued and returned unsatisfied; that, as they are advised, said Robbins and Dawson should have gone further, and exhausted their legal remedies and filed a bill before

your orator ; and that not having done so, their claims must be postponed to that of your orator, who, by superior diligence, has become entitled to a priority of lien over said Robbins and Dawson upon the land in controversy, and a priority of satisfaction out of the same."

The defendant Robbins answered, admitting and averring that the deeds sought to be set aside were fraudulent as stated in the bill, and as against him, and further averring that the said William T. Mathews, sr., who had been appointed, and for years acted as the guardian of David A., Osborne D. and Jesse S. Steele, resigned as such guardian, and, in December, 1876, made a final settlement of his guardianships of said minors in the probate court of Wilcox county ; that on said settlement, R. H. Dawson, as the guardian of the said David A. Steele, appointed as the successor of the said Mathews, and the said Robbins, as the guardian of the said Osborne D. and Jesse S. Steele, appointed as the successor of said Mathews, obtained decrees against the said Mathews for large sums of money due to said minors ; that the said Robbins, being a surety on the bond of the said Mathews, and the only solvent surety, and finding that the said Mathews would not pay said decree, and that execution would be sued out against him, obtained from the said Dawson a transfer of the decree in the latter's favor as guardian of David A. Steele, and said decree was the property of the said Robbins ; that on 13th December, 1876, executions were duly issued on said decrees and were continued to be issued thereafter up to and after the filing of the bill in this cause, all of which, except one issued in May, 1880, and in the hands of the sheriff at the time said answer was filed, were returned " no property found ;" and that at the time of the filing of the bill, executions issued on said decrees were in the hands of the sheriff. It is prayed that the answer be taken and considered as a cross-bill ; that said conveyances be declared fraudulent and void, and the land conveyed be sold, and the proceeds applied first to the payment of said decrees. The evidence introduced in the cause tended to support the averments of the answer.

On the hearing, had on pleadings and proof, the chancellor caused a decree to be entered, declaring the said conveyances fraudulent and void, and vacating them, ordering a sale of the land, and from its proceeds, decreeing satisfaction of complainant's demand in priority of the said decrees of the said probate court in favor of the defendant Robbins.

This appeal is prosecuted by said Robbins, in the name of all the defendants ; and it is made the basis of the errors here assigned.

[Mathews v. Mobile Mutual Insurance Company.]

S. J. CUMMING, for appellant.

R. H. DAWSON and JNO. P. TILLMAN, *contra.*

BRICKELL, C. J.—The court of probate has power, equivalent to that of courts of law, to enforce satisfaction of its decrees for the payment of money, by the ordinary writ of *fieri facias,* or execution.—Code of 1876, § 711. All writs of *fieri facias,* issuing from a court of record, are a lien on the lands and personal property of the defendant, subject to levy and sale, within the county of the sheriff to whom it is delivered for execution; the lien commencing from the day of delivery, and continuing as long as there is a continuation of the writ, and of its delivery to the sheriff, without the lapse of an entire term.—Code of 1876, § 3210. As to the lien, there has been no distinction, and there is no room for a distinction, between writs of *fieri facias* issued from the court of probate, and such writs issued from courts of law—they stand upon an equality.

The lien of an execution, by which is intended a *fieri facias,* is operative upon, and binds all property, real or personal, which is the subject of levy and sale in obedience to its mandate; and, of consequence, it is sometimes termed a general lien, to distinguish it from liens which operate only on specific or particular property. And the lien operates and binds, not only the property subject to its mandate, which is in the possession of the defendant, or the title to which stands in his name; but it operates equally on all such property, with the title to which he has parted for the purpose of hindering, delaying, and defrauding his creditors, until there is the coming in of a *bona fide* purchaser, without notice, and for a valuable consideration, from the fraudulent grantee or donee having possession. The conveyance or transfer of the property, though it may be valid between the parties, is invalid—it is void—as to creditors. And creditors may disregard it entirely, and proceed to levy and sell the property under legal process; or they may proceed, in a court of equity, to remove the conveyance or transfer as an obstacle to the advantageous enforcement of their legal rights. Whichever is the remedy they elect to pursue, it is but a remedy for the enforcement of the lien of the *fieri facias.*—Freeman on Executions, §§ 136, 430; *Carter v. Castleberry,* 5 Ala. 277; *Dargan v. Waring,* 11 Ala. 988. The lien, so long as the creditor keeps it alive by the regular issue and delivery of executions to the sheriff, can not be defeated or impaired by the activity of creditors acquiring a junior lien; nor is it lost by mere passiveness—by mere neglect to force a levy and sale; there must be culpable *laches,*

[Mathews v. Mobile Mutual Insurance Company.]

or fraud upon the part of the creditor, to work its loss. *Wood v. Gary*, 5 Ala. 43 ; *Johnson v. Williams*, 8 Ala. 529 ; *Turner v. Lawrence*, 11 Ala. 426 ; *De Vendell v. Hamilton*, 27 Ala. 156.

These well settled principles leave no room for doubt, that the executions issuing from the court of probate, which were in the hands of the sheriff when the bill was filed by the insurance company, for the subjection of lands, the legal title to which had resided in the defendant in execution, and which he had conveyed fraudulently, were a lien, operative and binding upon the lands, and, by reason of its seniority, entitled to prevail over all conventional liens, and all liens acquired by legal or equitable process, which were junior in point of time.

In the absence of statutes enlarging its jurisdiction, a court of equity did not intervene for the assistance of creditors who had not reduced their demands to judgments at law. Until the creditor had obtained judgment at law, the justness of his demand, and his right and relation as a creditor, were not established ; and to compel payment of a mere legal debt, the court would not interfere.—*Lehman v. Meyer*, 67 Ala. 396. But the creditor having obtained judgment and execution at law, the court assisted him, first, to remove fraudulent transfers or conveyances of property, upon which the judgment or execution operated a lien. The court, in this case, simply rendered aid in carrying into effect the judgment and execution at law. The lien of the creditor was acquired at law, and not through the instrumentality of the court of equity.—*Dargan v. Waring*, 11 Ala. 988 ; *Evans v. Welch*, 63 Ala. 250. And the court intervenes without awaiting the return of execution—it intervenes because the creditor had a lien.—*Lehman v. Meyer, supra ; Evans v. Welch, supra*. Until the filing of the bill, the issue and service of process, the lien of the execution is general, binding and operative upon all property subject to levy and sale ; to which all subsequent alienations made by the judgment debtor, and all subsequent liens arising by operation of law, are subordinate, so long as the execution is kept alive. The filing of the bill is not the creation of a new or other lien ; like a levy, it simply individualizes and renders the general lien specific as to the particular property, separating that property, in this respect, from other property covered by the general lien. The court also assisted judgment creditors, who, by a return of execution "no property found," showed that legal remedies had been exhausted, to reach assets not subject to execution at law. The assets not being subject to execution at law, a lien upon them could not be acquired otherwise than through the aid of a court of equity. The filing of

the bill, and the due issue and service of process, created a lien upon such assets as the bill sought to reach; it was said to be in the nature of an "equitable levy."—*Miller v. Sherry*, 2 Wall. 237; *Tilford v. Burnham*, 7 Dana, 109; *Beck v. Burdett*, 1 Paige, 305; *Corning v. White*, 2 *Ib.* 567; *Storm v. Waddell*, 2 Sandf. Ch. 494. The creditor first filing bill, and obtaining service of process, acquired the prior lien, which would prevail against creditors subsequently coming in, though they were senior judgment creditors, and, at law, may have had a priority of right to satisfaction from legal assets.—*Boynton v. Rawson*, 1 Clarke Ch. 410; *Lucas v. Atwood*, 2 Stew. 378; *Eaton v. Patterson*, 2 St. & Port. 9. But a junior judgment creditor, proceeding in a court of equity for the removal of fraudulent conveyances or transfers of property, subject to execution at law, did not acquire a preference over senior judgment creditors who had the prior lien at law.—*Dargan v. Waring, supra; Scouton v. Bender*, 3 How. Pr. 185; Bump on Fraud. Con. 535. A court of equity, in dealing with legal rights, adopts and follows the rules of law, in all cases to which those rules are applicable; and whenever there is a direct rule of law governing the case in all its circumstances, the court is as much bound by it as would be a court of law, if the controversy was there pending.—1 Story Eq. § 64. The court comes as an auxiliary, to give effect to, and render more available legal liens, not to displace them, nor to subvert the order of priority which the law has established. The senior judgment creditor may have lost his priority, and will lose it by the neglect to sue out execution from term to term; and if it is lost by such neglect, the junior creditor who is more diligent, and has resorted to equity, will be preferred. But, until the priority given by law is lost by *laches*, it will be protected and preserved. All liens acquired by operation of legal or equitable process, are in subordination to prior liens or equities, unless protection against them is afforded by the statutes of registration. The lien operates upon, and binds only the right, or title, or interest, or estate of the debtor; they are incapable of creating any higher right, title, interest, or estate.—*Smith v. Perry*, 56 Ala. 266.

The statute (Code of 1876, § 3886), authorizes a creditor not having a lien, a creditor at large, to proceed in equity to subject property which the debtor has fraudulently conveyed, or attempted to convey fraudulently. It was under this statute, that the insurance company, a simple contract creditor, filed the bill to reach and subject the land which Matthews had conveyed in fraud of his creditors. Whether a simple contract creditor, proceeding under the statute, acquires a lien upon the property which the debtor has conveyed, or attempted to con-

vey fraudulently, or whether the bill operates as a *lis pendens*, affecting and binding all parties acquiring rights and interests in the property subsequently, is not, probably, of practical importance. In either event, it is in subordination, not in destruction of prior liens and equities which are *bona fide*. It is rights, or interests, or equities which are acquired subsequently, that must yield to the lien or *lis pendens*. The creditor at large, resorting to a court of equity under the statute, has the rights of a judgment creditor, so far as a judgment was deemed essential to the jurisdiction of the court. But he has no higher rights, and when the lien or right of a judgment creditor would yield to senior rights or equities, the rights of the creditor at large derived from the statute must also yield. We can dissover no reason for displacing the prior lien of the execution issuing from the court of probate. If the controversy were in a court of law, which was proceeding to direct the sheriff in the distribution of the proceeds of the sale of the lands, they would be entitled to priority of payment; and it is the duty of the court of equity, in this respect, to follow the law.

The result is, the chancellor erred in not decreeing satisfaction of the execution in priority of the decree in favor of the insurance company; and for the error the decree must be reversed and the cause remanded.