CHARLES P. YOUNG ET AL., INTERVENING PETITION-
ERS, ETC.,

v.

CALEB CLAPP ET AL.

*Creditors' Bills—Insolvency—Fraud.*

1.   While an insolvent debtor retains dominion over his property, he may in good faith sell the same, or mortgage or pledge it to secure a *bona fide* debt, or create a lien upon it by operation of law, as by confessing a judgment in favor of a *bona fide* creditor.

2.   A creditor always has a right to take every precaution to save or secure his debt, and the fact that he delays until his debtor may be on the eve of bankruptcy, is no argument against the good faith of his acts.

3.   The return of an execution *nulla bona* upon the day on which it was issued, will form a sufficient basis for the filing of a creditor's bill.

4.   If in such case there are legal assets that might have been reached by execution, it may be a matter for a judgment debtor to set up, or if such legal assets come into the hands of a receiver, or are claimed by a receiver in a case where the legal remedy was not exhausted, the receiver's lien or right may be made second to executions that were properly issued.

5.   The filing of a creditor's bill and the service of process creates a lien on the equitable assets of a judgment debtor, and it gives to the vigilant creditor a right to priority in payment over persons filing subsequent bills.

6.   Upon proceedings instituted against an insolvent firm, it being contended that certain judgments were confessed in favor of judgment creditors named, under a collusive arrangement to get the property of said firm into the hands of a receiver, for the purpose of delaying and hindering other *bona fide* creditors, this court holds that there was an actual and full consideration for each judgment rendered; that said judgment creditors were justified in securing the debts due them, and that they were legally preferred by said insolvent firm; that in view of the evidence no liability for the firm debts attaches to a former member thereof; and declines to interfere with the judgment for the defendants.

[Opinion filed March 13, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. EGBERT JAMIESON, Judge, presiding.

Messrs. TENNEY, CHURCH & COFFEEN and MOSES & PAM, for appellants.

Messrs. A. B. JENKS and W. A. FOSTER, for appellees.

MORAN, P. J.   The proof in this case shows that for some time prior to January 1, 1884, Caleb Clapp and Thomas Davies were partners in the wholesale jewelry business in Chicago under the firm name of Clapp & Davies.   On said January 1, 1884, said Clapp & Davies entered into an agreement with one William B. Clapp, by which they purchased from him a large stock of jewelry, fixtures, and the accounts of his former business, agreeing to pay him therefor the sum of about $115,000; and it was arranged that said William B. Clapp's name should appear in the firm name of Clapp & Davies, and he should be held out to the world as a general partner, and for the use of his name, in lieu of a share in the profits of the business, he

was to receive a sum equal to twelve per cent on the average balance of his account, payable monthly. Said William B. Clapp continued the relationship thus commenced with the said business of Clapp & Davies until about March 1, 1886, when, by arrangement, said William B. Clapp withdrew from his apparent partnership relation in the firm, and notices were published in the daily papers, and circulars announcing the fact of his withdrawal sent to the customers of the firm. His account with the firm of Clapp & Davies was left an open account, the books showing that they were indebted to him for a large amount.

Clapp & Davies continued their business until April 14, 1887, when, being largely indebted to divers persons, and among them the said William B. Clapp, they executed divers judgment notes upon which judgments were entered in the Superior Court—

One in favor of one Cudworth for............$10,408.86
One in favor of one Mary E. Hanley for....... 12,993.30
One in favor of William B. Clapp for.......... 65,500.00
Another in favor of Mary E. Hanley for....... 14,067.70
One in favor of one Loring for............... 5,274.40
One in favor of one Peabody for............. 14,700.00
Another in favor of Peabody for............ 4,224.32
And one in favor of one Ada S. Havens for.... 10,388.82

eight judgments in all. On the same day, execution was issued on each of said judgments and placed in the hands of the sheriff, who levied the first four executions upon the stock of goods of Clapp & Davies and returned the other four executions "no property found and no part satisfied." On the same day said Ada S. Havens, Daniel A. Loring and Hiram B. Peabody, as complainants, filed a creditor's bill in the said Superior Court against Caleb Clapp and Thomas Davies as defendants, which contained the ordinary allegations found in such a bill, and alleged that executions on the judgments therein set out and described had been returned *nulla bona*. On the same day, on the application of the said complainants in said bill, one Charles Catlin was appointed receiver in said cause, and an order was entered requiring the

defendants, said Clapp & Davies, to transfer all their property
and deliver possession of same to said receiver.   Afterward
said Clapp & Davies did make such transfer and deliver pos-
session of such property to said receiver.   No answer to the
original bill was ever filed by Clapp & Davies.   Subsequently
intervening petitions were filed in said cause by a number of
persons.   The petition under which the intervenors come in
and on the allegations of which they rely, showed that the
complainants in said petition had recovered judgments before
a justice of the peace on which executions were returned
" no property found," and alleged that Clapp & Davies had
been prior to the 14th day of April, 1887, engaged in the busi-
ness of wholesale jewelers; that in the course of said business
they had contracted debts to a large amount; that $150,000
of said debts was for goods and merchandise purchased by
them upon credit in the course of their business within six
months last past before the filing of said intervening petition;
that among the debts so contracted were the debts due to the
complainants in the intervening petitions; that for more than
six months said Clapp & Davies had been insolvent and unable
to pay their obligations, and that they combined and confed-
erated with their co-defendants, or some of them, to try and
dispose of their property and effects, including their merchan-
dise, and that in pursuance of said scheme they caused the
judgments heretofore mentioned and set out to be entered in
the Superior Court, and alleged that said Clapp & Davies had
consented in open court to the appointment of the receiver;
that the judgments were confessed with the purpose on the
part of Clapp & Davies to give a preference to the said judg-
ment creditors in whose favor they were confessed, and to
defeat and avoid the operation and effect of the laws of the
State of Illinois regulating voluntary assignments, and alleged
on information and belief that the said judgments, or some
one or more of them, is or are wholly without consideration,
and that some one or more of them were for a much greater
sum than the amounts actually due from Clapp & Davies to
the plaintiff in said judgment or judgments.

Intervenors asked that the petition be consolidated with

the creditor's bill filed, and that the intervenors or the peti-
tioners have the same rights and equities which they could
have had, had this bill been filed either as an intervening
petition in said cause or as an original bill; prayed that the
receiver be enjoined and restrained from paying over to any
of said persons in whose favor the said judgments against
Clapp & Davies were confessed, any of the moneys or prop-
erties that had come to the hands of said receiver; that said
judgments and all the proceeds thereof, subsequent to the
assignment to Catlin as receiver and the transfer and assign-
ment of the property and effects, be decreed and adjudged to
be a general assignment of the property and effects of said
Clapp & Davies; and that Catlin may be decreed to be the
assignee holding the property as a trustee; and that after
paying all costs and expenses, all the money be divided equi-
tably and *pro rata* among the creditors of Clapp & Davies, in
proportion to the debts due to each creditor and the whole
amount of the indebtedness of Clapp & Davies. These peti-
tions were answered by the plaintiffs in the judgments which
were confessed, and all fraud and collusion denied.

By consent of the plaintiffs in the first four judgments the
sheriff turned over the property on which he had levied his
executions to the receiver, and under the orders of the court
the tangible property, as well as the book accounts, were sold
by the receiver. The property that had been levied upon by
the sheriff brought the sum of $101,000, and the book accounts
brought the sum of $10,000. Both sales were made under
order of court.

Upon the hearing, the court found the allegations of the
original bill to be true, and ordered that the $101,000 be applied
on the four judgments on which the levy upon the stock had
been made, and that the $10,000 realized from the sale of the
book accounts and the $14,000 in the hands of the receiver,
making in all $24,000, should be applied *pro rata* on the
judgments of the complainants in the original creditor's bill.
A large amount, to wit, the sum of $1,600, of attorney's fees,
was included in the amounts of the eight judgments confessed;
but the money realized upon the sales of the property by the

receiver was paid over in satisfaction of the judgments without the deduction or allowance of any attorney's fees from the amount realized.

If the contention of appellants, that the judgments were confessed in favor of the judgment creditors by Clapp & Davies under a collusive arrangement between said parties to get the property of Clapp & Davies into the hands of a receiver for the purpose of delaying and hindering other *bona fide* creditors, was sustained by the proof, there would be but little doubt that they would be entitled to relief.   But a careful examination of all the evidence in the case not only fails to support said contention, but in our opinion, is very strong in contradiction thereof.   That there was an actual and full consideration for each judgment is proven beyond a doubt; and that the action of the creditors in getting judgment notes and entering judgments thereon resulted from their anxiety to secure their debts is manifest.   That the debtors meant and desired to prefer these particular creditors is no doubt true; but they have the unquestioned right to prefer one creditor to another, and by confessing a judgment in his favor, or otherwise securing him, to place him in a position where the preference which they desire him to have shall be realized.   This is the settled rule of law whenever such preference is not given under circumstances which make it part of an assignment under the general assignment law of this State.

While the insolvent debtor retains dominion over his property, " he may in good faith sell his property, mortgage or pledge it to secure a *bona fide* debt or create a lien upon it by operation of law, as by confessing a judgment in favor of a *bona fide* creditor.   *   *   *

"A creditor always has a right to take every precaution to save or secure his debt; and the fact that he delays until his debtor may be on the eve of bankruptcy is no argument against the good faith of his acts."   Preston v. Spaulding, 120 Ill. 208; Farwell v. Nilsson, 133 Ill. 45; Schroeder v. Walsh, 120 Ill. 403.

The debtors then had the right to prefer the creditors by confessing judgments to them for debts *bona fide* due; and in that there is no fraud or semblance of fraud.

Appellants contended in an elaborate argument that there was some fraud of which they could take advantage in the relation which W. B. Clapp sustained to the firm of Clapp & Davies. As will be seen from the statement of facts, these appellants allege that the indebtedness to them was created within six months prior to the 14th day of April, 1887, at which date the judgments were confessed. They also show by their allegations, that all ostensible relations between said William B. Clapp and the firm of Clapp & Davies terminated about March 1, 1886, and that the termination of said relation was duly notified to all customers of the firm. If, in fact, appellants' debt was contracted with the firm upon the credit of William B. Clapp's name, and the circumstances existed which would justify appellants in holding him for such indebtedness, their remedy would be complete at law, and satisfaction of their judgment could be obtained from William B. Clapp who, so far as any allegations or proof in this record discloses, is abundantly responsib'e. But the allegations and proof of appellants showed that they had no claim whatever against William B. Clapp; that they did not sell the goods which gave rise to the indebtedness, upon his credit. Therefore, whatever the original relation between William B. Clapp and the firm of Clapp & Davies was, is no concern of these appellants.

It is contended that the executions on the four judgments which formed the basis for the creditor's bill, were returned *nulla bona* on the day that the execution was issued.

It is well settled that such an immediate return of the execution will form a sufficient basis for the filing of a creditor's bill. True, the sheriff need not return the execution before the expiration of ninety days; but if he takes the responsibility and does return the execution, the creditor may, under the statute, exhibit his bill. If there are legal assets that might have been reached by execution, that may be a matter for a judgment debtor to set up; or if such legal assets come into the hands of a receiver, or are claimed by a receiver in a case where the legal remedy was not exhausted, the receiver's lien or the receiver's right may be made second to executions that

were properly issued, as shown in the case of Durand & Co. v. Gray, Kingman & Collins, 129 Ill. 8.

So far as the decree appealed from devoted the proceeds of the strictly equitable assets to the creditors who filed the creditor's bill, to the exclusion of the intervenors, we regard the action of the court as correct.

The general rule is that the filing of a creditor's bill and the service of process creates a lien on the equitable assets of the judgment debtor. It has been aptly termed an "equitable levy." In Edmeston v. Lyde, 1 Paige, 639, it is said: "The creditor whose legal diligence has pursued the property into this court is entitled to a preference as the reward of his · vigilance."

In Corning v. White, 2 Paige, 567, it is said:

"This court has frequently decided that the creditor who first files his bill herein to reach the defendant's property which can not be sold on an execution at law, obtains a preference, and that the defendant has no right to object that there are other creditors whose debts he had also refused to pay out of such property. * * *

"But the filing of the bill here under the provisions of the revised statutes operates as an attachment of property which can not be levied on at law. It gives to the vigilant creditor a right to a priority in payment; and the creditor who next files his bill will have the second lien." See also Miller v. Sherry, 2 Wallace, 237; Tilford v. Burnham, 7 Dana, 109.

The cases above cited from Paige's reports have been quoted with approval in this State in numerous cases. Rappleye v. International Bank, 93 Ill. 396; Gooding v. King, 30 Ill. App. 169. In Section 392 of Waite on Creditors' Bills it is said: "The first party to move is rewarded as a vigilant creditor, the commencement of this suit being regarded as an actual levy upon the equitable assets of his debtor, and entitles him to a priority."

From the foregoing cases it appears that it is not alone the discovery and uncovering of assets that entitles a creditor to priority of payment, but that the creditor, by being the first to file his bill, obtains a prior lien and a right to have his

debt first satisfied out of the equitable assets, the existence of which is not concealed but is known to all the creditors. It is his vigilance and diligence in taking the first step that gives him the first lien. The filing of his bill secures that lien the same as placing an execution in the hands of a sheriff secures a lien upon legal assets.

The proof in the record negatives all of appellants' contentions of fact, and the authorities are against them on the proposition of law which they urge against the decree of the Superior Court.

There is no error in the record, and the judgment of the Superior Court will therefore be affirmed.

*Judgment affirmed.*