# Bamberger, Bloom & Co. *v.* Voorhees, Miller & Rupel.

*Bill in Equity between attaching Creditors at Law, to set aside prior Fraudulent Attachment, and determine Priority of Liens of subsequent Attachments.*

1. *Lien of attachments levied on same property.*—When two or more attachments are levied on the same property, but on different days, the lien of each dates from its levy, and is subordinate to those levied prior to it; and if all the suits are reduced to judgment, they must be paid in the order of their respective levies.

2. *Same; when aid of equity is invoked to set aside prior attachment as fraudulent.*—If the attachment first levied is attacked by the subsequent attaching creditors, by bills in equity, on the ground of fraud and collusion between that creditor and the debtor, and decrees are obtained setting it aside on that ground, the respective liens of the complainants are not affected by the date on which their bills were filed, but are governed, as at law, by the priority of the levy of their respective attachments.

3. *Multifariousness; misjoinder; laches in filing bill.*—When several attachments are successively levied on a stock of goods, on which a prior attachment has been levied by a person also claiming to be

a creditor, and each of the subsequent creditors then files a bill in equity to set aside the prior attachment on the ground of fraud and collusion between the plaintiff and the debtor ; the bill of the creditor whose attachment was first levied being filed last, making the other attaching creditors parties defendant, and claiming priority of payment because his attachment was first levied ; it is neither multifarious, nor demurrable for misjoinder of parties ; nor is he guilty of culpable *laches* in not filing his bill until after the lapse of eighteen months from the levies, when it appears that the money arising from the sale of the attached goods has been retained in the hands of the sheriff under injunctions issued under the former bills, but it is suggested that the several cases be consolidated.

APPEAL from the City Court of Decatur, in equity.

Heard before the Hon. Wm. H. SIMPSON.

The bill in this case was filed on the 19th day of October, 1891, by Voorhees, Miller & Rupel, a mercantile firm doing business in Cincinnati, Ohio, as creditors of Isaac Pinkus, lately carrying on a mercantile business at Decatur, Alabama, under the name of I. Pinkus & Co., against Herbert Cartwright, said Pinkus, the sheriff of Morgan county, and several other creditors who had levied attachments on the stock of goods of their said debtor—viz., Bamberger, Bloom & Co., Lowenheim, Seinsheimer & Kahn, and Marks Bros. & Marks. The facts were thus stated by Judge HARALSON, who delivered the opinion of the court :

"The averments of the bill are, that Isaac Pinkus, a merchant in Decatur, Alabama, doing business under the name of I. Pinkus & Co., had been buying goods from complainants during the years 1889 and 1890, and on the 1st of March, 1890, owed them a balance on their purchases of $975.30, as evidenced by their three promissory notes, for $314.95 each, of date 20 February, 1890, payable in 30, 60 and 90 days, respectively, and a verified account of $30.50 ; that prior to March 1, 1890, said Pinkus was heavily indebted to others besides complainants, and was, in fact, at that time insolvent ; that long prior to that date, Herbert Cartwright had been a trusted employé and confidential clerk of said Pinkus, and knew his financial condition. and that he was insolvent ; that during the latter part of February, and early in March, 1890, said Pinkus secretly removed from his store a considerable portion of his then stock of goods, with the intent to hinder and delay his creditors in the collection of their obligations against him, and with the intent to defraud them ; that in pursuance of this fraudulent intent, he entered into a conspiracy with his said clerk, Cartwright, the result of which was, that said Cartwright sued out an attachment against said Pinkus & Co., from the City Court of Decatur, for a pretended debt from said

Pinkus & Co. to him, of $9,500, and caused said attachment writ to be placed in the hands of the sheriff of Morgan county, and to be levied on the merchandise, goods, chattels and estate of said I Pinkus & Co., and taking the same into his possession, proceeded to sell the same, and converted them into money ; that said pretended indebtedness of said Pinkus & Co. to said Cartwright,—except as to a small part thereof, the exact amount of which the complainants were unable to state,—was simulated, fictitious, and not a *bona fide*, honest debt, but was conceived for the purpose of fraud, and with the intent to defraud the creditors of said I. Pinkus & Co. ; that on the 4th March, 1890, subsequent to the attachment of said Cartwright, complainants, also, sued out a writ of attachment from said City Court of Decatur, against said Pinkus & Co., to collect their said debt against said Pinkus, and placing it in the hands of the sheriff, caused the same to be levied, that day on the same property on which the attachment of said Cartwright had been levied ; that subsequently they obtained a judgment in said City Court in said attachment suit against said Pinkus & Co., for $1,005.50, besides $20.75, costs of suit ; that said Pinkus & Co. had no other property besides that levied on, which was liable to execution, and that was not sufficient to pay the amount of said pretended claim of said Cartwright; that subsequent to complainants' said attachment, and to the levy of the same, other creditors— Bamberger, Bloom & Co., Lowenheim, Seinsheimer & Kahn, and Marks Brothers & Marks—sued out attachments, also, out of said City Court, against said Pinkus & Co., and caused them to be placed in the hands of the sheriff, and levied on the same property that the attachments of said Cartwright and of complainants had been, before that time, respectively levied, which were all levied subsequent, and subject to complainants' said attachment; that said parties, each, also filed a bill in equity, in said City Court, for the purpose of setting aside the attachment, of said Cartwright, and its levy on said property, as being fraudulent and void as to the creditors of said Pinkus & Co., and in these suits the sheriff was enjoined from paying over the money realized from the sale of the goods, under the attachment of said Cartwright, and it is now in the custody of the sheriff, subject to the orders of the court. These complainants do not appear to have been made parties defendant to said suits. The prayer of the bill is, that the attachment of said Herbert Cartwright be declared fraudulent and void ; that complainants said claim against

defendant Pinkus be first paid out of the proceeds of said sale ; that the sheriff be enjoined and restrained from paying out any of said money, until complainants' said judgment and costs are first paid, and for general relief."

A demurrer to the bill was filed by each of the creditor firms who were made defendants, assigning as grounds of demurrer, (1) that the bill was multifarious ; (2) that there was a misjoinder of defendants ; (3) that the complainants were not entitled·to priority over the other attaching creditors who had first filed bills to set aside the attachment of Cartwright ; and (4) that the complainants were guilty of laches in not filing their bill at an earlier day, and had thereby lost any priorty of lien they had acquired by the prior levy of their attachment. The City Court overruled the demurrers, and its decree is now. assigned as error.

HUMES, SHEFFEY & SPEAKE, and W. R. FRANCIS, for appellants.—(1.) The bill is demurrable for multifariousness, and also for misjoinder of parties defendant. It has a double object and purpose, and improperly joins as defendants parties who have no common-interest in the subject-matter. *Adams v. Jones*, 68 Ala. 117 : *Boyd v. Hunter*, 44 Ala. 705 ; *Monroe v. Hamilton*, 47 Ala. 217 ; *Harden v. Swoope*, 47 Ala. 273 ; *Randall v. Boyd*, 73 Ala. 282 ; *Bolman v. Lohman*, 74 Ala. 507. (2.) The transactions between Cartwright and Pinkus, though fraudulent as against creditors, were valid and binding as between themselves ; and after the levy of Cartwright's attachment, there was no interest remaining in Pinkus which was subject to the levy of attachments at law at the suit of other creditors. Their remedy was a bill in equity, in the nature of an equitable attachment; and the creditor first filing his bill acquired a prior lien.—*Cartwright v. Bamberger, Bloom & Co.*, 90 Ala. 405 ; *Matthews v. Mobile Mutual Insurance Co.*, 75 Ala. 85 ; *Lucas v. Atwood*, 2 Stew. 378. (3.) If the complaints ever had any right of priority ·over the other attaching creditors, they have lost it by their undue delay in filing their bill.—*W. U. Tel. Co. v. Judkins*, 75 Ala. 428 ; *Cowan v. Sapp*, 74 Ala. 44 ; *Dargan v. Warring*, 11 Ala. 988 ; *Turner v. Lawrence*, 11 Ala. 426 ; *Mathews v. Mutual Insurance Co.*, 75 Ala. 85.

E. W. GODBEY, *contra.*—(1.) A prior lien on the property attached was acquired by the prior levy of the complainants' attachment at law; and the aid of a court of equity is only invoked to aid and give effect to that ·lien.—*Cartwright v. Bamberger, Bloom & Co.*, 90 Ala. 406 ; *Mathews v. Insurance Co.*, 75 Ala. 85; Adams' Equity, *255; Waples on Attach-

ment, 295. (2.) There has been no culpable *laches* in the filing of complainant's bill, and no injury has accrued by their delay, since the money is still in the hands of the sheriff awaiting distribution. (3.) All the parties to the bill are interested in the distribution of the fund in litigation, and are proper parties.—*Adams v. Jones*, 68 Ala. 119.

HARALSON, J,—It is provided by statute in this State, that the levy of an attachment creates a lien in favor of the plaintiff.—Code, § 2957. This lien is incohoate until judgment is obtained in the attachment suit, when it becomes specific and fixed, and dates from the levy of the attachment. The levy places the property in the custody of the law, and the lien it creates can not be divested or overriden by any subsequent lien. When there are writs of attachment subsequent to the first, each differing in date of levy, and all levied on the same property, each subsequent one is levied in subordination to the ones that precede it, and the lien of each, dates from the moment of its levy ; and if all are prosecuted to judgment, they must be paid, in the order of their respective levies.—1 Brick. Dig. 161; 3 Brick Dig. 58; Drake on Attach., §§ 225, 228.

When Cartwright sued out and levied his attachment on the property of I. Pinkus, the law gave him a lien on it, from the time of its levy, subject to be divested at law, only on failure to prosecute his attachment to judgment, and to become fixed, if and when he obtained such judgment. This lien of an attachment is a legal, in contradistinction to an equitable lien. It is in all respects similar, in character, to an execution lien, the one being general, and the other specific ; each is acquired at law, and not through the instrumentality of a court of equity. The execution lien, so long as the creditor keeps it alive, by renewals, placed in the hands of the sheriff, can not be defeated or impaired by the activity of other creditors who may have acquired junior liens. And so, no junior attachment lien can override its senior, which is subject to no infirmity to make it void.

In this case, there were several attachments levied, subsequent to Cartwright's, on the same property. The complainants' was prior to the others, in date of levy; and, the attaching creditors, subsequent to Cartwright, including complainants, have a common interest, and are proceeding, to defeat Cartwright's, on the same ground, namely, that it was issued on a simulated debt, and was intended to defraud the creditors of Pinkus, their common debtor. They each have filed a bill, to remove this alleged fraudulent attach-

ment, so as to displace it in favor of their own.   However
it may have been held elsewhere, it is the settted practice
in this State, that in an attachment suit at law, another cred-
itor can not intervene by petition, and be made a party to
the suit, in order that he may attack the proceedings on the
ground of fraud, or fraudulent collusion between the attach-
ing creditor and the debtor.—*Cartwright v. Bamberger, Bloom
& Co.*, 90 Ala. 405. And it was held in that case, that a
junior attaching creditor had a right to invoke the aid of a
court of equity, in a bill filed against the prior fraudulent
attaching creditor, to declare his attachment fraudulent, and
have it set aside, to make his lien, already fixed at law, oper-
ative against such fraudulent obstruction.   The purpose of
a bill of the kind can not be to have a lien declared, but
simply to aid in carrying into effect one already created and
existing at law —Drake on Attach., § 225.   In discussing
this principle in another case, in its application to execution
liens, which is apposite to the case in hand, we said : "A
court of equity, in dealing with legal rights, adopts and fol-
lows the rules of law, in all cases to which those rules are
applicable ; and, whenever there is a direct rule of law,
governing the case in all its circumstances, the court is as
much bound by it, as would be a court of law, if the con-
troversy was there pending.   The court comes as an auxil-
iary to give effect to, and render more available, legal liens,
not to displace them, nor to subvert their order of prior-
ity, which the law has established."   And it was further
said, that a junior judgment-creditor, proceeding in a court
of equity for the removal of fraudulent conveyances or trans-
fers of property, subject to execution at law, does not acquire
a preference over senior judgment-creditors, who have the
prior liens at law.—*Mathews v. Mobile M. Ins. Co.*, 75 Ala. 85.
No reason can be assigned for the application of this prin-
ciple to execution, and not to attachment liens.

If the complainants and the defendants were in a court
of law, which was proceeding to direct the sheriff in the
distribution of the proceeds of the sale of this property,
among the attaching creditors, they would be entitled to
priority of payment according to the date of their respec-
tive levies.   It is the duty of a court of equity, in this
respect, to follow the law.

If Cartwright's attachment was fraudulent, and was in-
tended, as is alleged, to transfer the property levied on from
Pinkus to him, it had the same effect as a fraudulent con-
veyance, and no equity remained in Pinkus ; for, as between
him and Cartwright, the transaction was absolute and irre-

vocable. But, as between them, on the one side, and the creditors of Pinkus, on the other, the transaction would be void; and this bill, and those filed by the other creditors, are aimed, not at any supposed or real equity remaining in Pinkus, but to wrest the whole title from Cartwright and Pinkus, and subject the property, or its proceeds, to the superior liens of the creditors whose attachments have been in good faith sued out, to enforce the collection of their debts.

The contention, therefore, of the defendants, that the interest of Pinkus & Co. in the stock of goods, seized under the fraudulent attachment of Cartwright, the moment the attachment was levied, became an equitable estate for the benefit of *bona fide* creditors, and that, therefore, it became a race of diligence between the creditors as to which of them would first take advantage of this equitable right and secure a first lien on the goods, or the proceeds of their sale, by filing a bill in a court of equity for that purpose, does not find sanction, it would seem, either in principle or authority. If no attachment had been sued at law, and no liens there created, the principle contended for, might be applied, but it is inapplicable to this case.

Enough has been said, already, to indicate that the complainants and other attaching creditors, defendants, have a common interest to overthrow the alleged fraudulent lien of Cartwright. They have a common tie that far; and whether the lien of the one or the other, as between themselves, is to have priority, it is a matter of common concern, growing out of the same alleged fraudulent transaction between Cartwright and Pinkus, and the legal relations of the creditors respectively, to that transaction, that it shall be annulled and held for naught. It can not be said that the bill, having for its object the setting aside of said fraudulent attachment and attempted transfer of the property of the common debtor, and the adjustment of these competing liens for the money in the hands of the sheriff—matters springing from the same transaction, and in which all the parties are interested—is multifarious, or that there has been an improper joinder of defendants. Though their claims against Pinkus are distinct, there is a contention between them as to priority out of a common fund, and it is necessary for complainants' relief, and proper for the relief of each, that they all be brought before the court, that their competing priorities may be rightly and finally adjusted.—*Stone v. Knickerbocker Life Ins. Co.*, 52 Ala. 589 ; *Adams v. Jones*, 68 Ala. 117; *Martin v. Carter*, 90 Ala. 97.

[Bamberger, Bloom & Co. v. Voorhees, Miller & Rupel.]

From the developments in this case, we venture the suggestion to the lower court, of the propriety of making an order consolidating with this case the other causes pending in equity in said court, touching the same matters here involved for determination, and try them all together as one case. The settlement of the matters in dispute will thereby be speedier and more satisfactorily adjusted, and at less expense.

In *Cartwright's Case, supra,* we said, "It has been adjudged, and needs no argument to justify the conclusion, that the summary jurisdiction exercised by a court of law, in determining the priorities of the legal liens of rival attaching creditors, whether on the motion of the sheriff, or of the parties themselves, asking for a distribution of the fund arising from the sale of the attached property, in no manner interferes with the jurisdiction of equity to adjust the rights of such rival claimants, in a proper case for cognizance by a court of equity.— *Gusdorf & Co. v. Ikelheimer & Co.,* 75 Ala. 148."

The other contention of the defendants, that the complainants are barred of their lien because of their supposed *laches* in filing this bill, can not be sustained. In what respect have defendants been prejudiced or injured by any delay of the complainants? The money, the proceeds of the goods, was early tied up in the hands of the sheriff; the defendants made haste to file their bill for that purpose, and to distance the complainants in that mistaken race for priority; and, if complainants, feeling safe in their position, delayed some time, but not so long as to damage any one, before they filed their bill, they ought not, for the short time that is pleaded as *laches* against them, to be deprived of the right which the law awards them, for their superior diligence in having first sued out their attachment—the real and legal struggle for priority. The *laches,* to be available, must be culpable.

Nor is there any merit in the grounds of demurrer, that the bill fails to show that there has been a final determination of the suits between the other defendants and said Pinkus and Cartwright. It does not appear that the complainants were parties to those suits, nor that their decision would bind them.

We find no error in the decree of the chancellor overruling the demurrers to the bill, and it is affirmed.