## F. CARRERA & HNO. et al.

### v.

## E. DEL PILAR HNOS.

---

San Juan, Bankruptcy, No. 172.

LIEN OF LOCAL ATTACHMENT.

Bankruptcy—Attachment Lien.

    1. An attachment under the local law to secure the effectiveness of judgments is to be construed in pari materia with the attachment laws of the United States, and the liens in both cases are substantially the same.

Attachment Laws of the Different States.

    2. The attachment laws of the different states are not uniform. In Re Blair, 108 Fed. 529, 530, it is held that the attachment lien is complete from the time of the levy, and that the subsequent judgment is important only in providing a method for enforcement. The reasoning in the Blair Case was approved by the Supreme Court in considering equitable liens. Metcalf Bros. v. Barker, 187 U. S. 165. *Quære:* Was it approved as to legal distinguished from equitable remedies?

Carrera & Hno. v. E. del Pilar Hnos.

**Bankruptcy—Lien Created by a Creditors' Bill—Attachment Law.**

    3. A lien created by a creditors' bill in equity is different from an attachment law in that the former is complete and creates a vested right against the world, while the latter is incomplete and conditional as regards third parties.

**Local Attachment Law—Sale at Auction.**

    4. The attachment law of Porto Rico allows the property attached to be sold at public auction to the best bidder.

**Local Attachment Law—History—Construction.**

    5. The history of the attachment law of Porto Rico to secure the effectiveness of judgments shows that it has for its basis rather the holding of the property attached in a kind of public receivership, than to vest absolute rights, and hence a judgment and execution thereon had within four months of the bankruptcy are ineffective against the bankrupt's trustee.

Opinion filed December 20, 1916.

*Mr. Harry F. Besosa* for petitioning creditors.

*Mr. Henry G. Molina* for Yumet & Co.

HAMILTON, Judge, delivered the following opinion:

This cause has been before the court at different times, and now by consent of parties comes up for reconsideration of the referee's report, which allowed a lien to the claim of Yumet & Company under their attachment. In order for full consideration, the whole matter is now taken under advisement.

1. It has previously been decided in this case that attachment under the local law to secure the effectiveness of judgments is to be construed in pari materia with the attachment laws in the United States. That is to say, that the lien given in the one

case is substantially the same as the lien given in the other case. The point was expressly kept open, however, as to when that lien began. This point is important because of the provision in the bankruptcy law avoiding liens within four months before bankruptcy. The judgment in the case was rendered February 2, within four months of the bankruptcy, and on March 2 there was an order of the local court directing execution to issue to the marshal. This was accordingly effected. The question, therefore, is Is the lien under the local law to secure effectiveness of judgments complete from the time the marshal takes the goods in possession under the order of attachment, or is there some element left incomplete until the issue of the execution under which the marshal sells?

2. It cannot be said that the American Attachment Law is uniform in all the states. Alabama may be taken as a representative of the older states, drawing its legislative principles largely from Virginia, and conforming to common law even more than the eastern states. There attachment is carefully regulated by statute, and is granted upon bond in certain prescribed cases, being administrative and largely under the direction of the clerk. The judge has little to do. The attachment is pretty nearly the same as an advance execution. The levy of an attachment or service of a garnishment creates a lien in favor of the plaintiff. Ala. Civ. Code, 1907, § 2948; Bamberger, B. & Co. v. Voorhees, 99 Ala. 292, 13 So. 305. The lien is inchoate, and does not devest ownership. Judgment must follow or it is lost. Joseph v. Henderson, 95 Ala. 213, 10 So. 843. The subsequent bankruptcy of the defendant did not impair the lien under the Bankruptcy Act of 1867, which, however, proceeded upon different principles from the present law, and left pro-

ceedings in attachment to be finished in the local courts in which they were begun. Martin v. Lile, 63 Ala. 406. Nevertheless the lien on personal property is lost if the defendant dies before judgment and his estate is declared insolvent. Seals v. Holloway, 77 Ala. 344. The liens are governed by the order in which they are levied, and a junior attaching creditor cannot obtain priority by first obtaining judgment. Alexander Bros. v. King, 87 Ala. 642, 6 So. 382. The theory there is that the property is in the hands of the court, and the procedure after judgment is not generally the levy of an execution, which is unnecessary, but an order to the sheriff to sell what he already has possession of. This is called a writ of venditioni exponas. If the property so sold does not satisfy the judgment, there may be an additional execution, to be levied on any other property of the defendant. Ala. Civ. Code, 1907, § 2971.

It has been held under the Connecticut law that the lien of an attachment is incomplete until judgment; and so, if the judgment is within the four months preceding bankruptcy, the lien cannot be considered as one protected against bankruptcy proceedings. Re Lesser, 108 Fed. 201. This has been denied as applicable under the Massachusetts law by the well-considered opinion of Re Blair, 108 Fed. 529, 530, by District Judge Lowell. In both states the attachment sale is under a subsequent execution. It is held in the Blair Case that the attachment lien is complete from the time of the levy, and that the subsequent judgment is important, not as adding any element to the lien, but as providing a method for enforcement. The principle may be considered analogous to that of a mortgage. The lien of the mortgage is complete from the time of the execution of the mortgage, and the power of sale is a means of satisfaction rather than

an element in the lien itself. To the same effect is Re Beaver Coal Co. 51 C. C. A. 519, 113 Fed. 889, 891; Re Crafts-Riordon Shoe Co. 185 Fed. 931, 936; and Batchelder v. Wedge, 19 Am. Bankr. Rep. 268. The Blair opinion is cited in the case of Metcalf Bros. v. Barker, 187 U. S. 165, 47 L. ed. 122, 23 Sup. Ct. Rep. 67.

This result has been expressly declared by the Supreme Court in the case of the lien secured by filing a creditors' bill under the New York law. The failure to secure the judgment will devest the lien, but will not affect the fact that a complete lien originally existed. Metcalf Bros. v. Barker, supra. The reasoning in the Blair Case was approved by the Supreme Court in considering the matter of equitable liens; but was it adopted, and does it represent the present state of American law as to legal, as distinguished from equitable, remedies?

3. The case of Clarke v. Larremore, 188 U. S. 486, 47 L. ed. 555, 23 Sup. Ct. Rep. 363, throws light upon the point. There it was held that neither the levy of an execution nor the sale of the property changed the title so as to affect third parties, and that accordingly proceedings in bankruptcy affected the money proceeds in the sheriff's hands as still the property of the defendant. This shows that the title to the property levied on is not changed by an execution until the money proceeds are delivered over to the plaintiff. A fortiori there can be no change of title because of an attachment levy until the money is realized on the sale, and it is turned over to the plaintiff. Attachment is in the nature of a preliminary execution, but it certainly is not stronger than execution. In the Larremore Case the judgment, execution, and sale were all within four months of the bankruptcy, but this does not seem to be the only basis of

Carrera & Hno. v. E. del Pilar Hnos.

the decision. The reasoning of the court would indicate, that, independently of this, even if every step had been complete four months before the bankruptcy except the payment to the plaintiff the title nevertheless would pass to the trustee. The lien from legal proceedings, therefore, would not confer any vested right upon the plaintiff as against creditors in bankruptcy, whatever might be true as between plaintiff and defendant alone. The conclusion would seem to be, therefore, that a lien created by a creditors' bill in equity is of a different character from that of an attachment or execution at law; the former being complete and creating a vested right against the world, the latter being incomplete and conditional as regards third parties. The plaintiff's right is not complete as against the defendant's creditors in bankruptcy. So seems the law to stand in the United States.

4. The precise question to be determined is whether, under the Porto Rico law, a complete lien is to be considered as created by the levy of the attachment upon the personal property in this case. If so, it was prior to four months before bankruptcy and will be protected. If not, it will not be protected. What, therefore, is the proper construction of the local attachment? Is it to be considered as a prohibition on the alienation of the defendant's property in question, effected by a sequestration keeping it in the possession of the court, or is it a provisional change of ownership of that property or its value, contingent upon the result of the suit? The wording of the local statute is so general, so much is left to the discretion of the court, that light must be sought in the practical construction made by the courts. There is a writ (orden) of attachment issued analogous to the writ (orden) of execution. The marshal takes and holds possession, but the defendant is permitted to alienate the property at auc-

Carrera & Hno. v. E. del Pilar Hnos.

tion. Act of March 1, 1902, § 10. This would not be allowed
under the American system. After judgment rendered, the
remedy is not by an order of sale, but by a formal execution.
Code Civ. Proc. § 246. Such was the course pursued in the
case at bar as shown by the papers in the file. A sale under exe-
cution at auction to the highest bidder would follow under cer-
tain provisions prescribed by law. Code Civ. Proc. § 253. Un-
der these provisions, when is the lien of the attachment to be
considered as perfect?

5. The Porto Rican law to secure the effectiveness of judg-
ments is a peculiar system. It is much more than an attach-
ment law. It gives the judge authority to adopt almost any
method which seems necessary to preserve the status quo and to
prevent the defendant from putting the plaintiff in a worse posi-
tion at the end of the suit than he was at the beginning. One of
these methods is what is called embargo, translated in English
as attachment, which itself lodges much discretion with the
judge, and is not so much as in the states an administrative pro-
cedure controlled by the clerk of the court. It is necessary to
know the history of this Porto Rican legislation in order to un-
derstand it fully. As noted in a previous opinion in this case,
the Act of March 1, 1902 (Pamphlet, Act 166), is of Spanish
origin. It is a redaction of articles 1395–1416 of the Spanish
Law of Civil Procedure adopted in 1881 and extended to Porto
Rico in 1885. These articles in some respects repeat the pre-
existing law found in the Law of Civil Procedure of 1855, and,
although the distinction between attachment or embargo and
execution is comparatively modern, the idea of protecting a
plaintiff by impounding the property of the defendant is an old
one. It begins with the sequestratio of the Roman Law, found

in Justinian's Code. Codex, bk. 4, title IV., Law 1. The Digest, in bk. 24, quotes earlier jurists on the subject. From this source it has come to the Spanish Codes, and may be found in the Law of Toro, Partidas and Novisima Recopilacion. The Partidas III. title IX., law 1, provides that property belonging to another may be placed in the hands of a trustee in six cases. This placing in trust, en fieldad, is expressly said to be the Latin sequestratio. The second ground is apprehension that the defendant may transfer, impair, or squander a chattel in litigation, and this would seem to be the foundation of the present legislation. In the Novisima Recopilacion, bk. 10, title XI., law 5, which is the same as Law of Toro 66, it is provided that a defendant need not give a bond unless there was a prior investigation of the claim, or an authentic deed.

Subsequent legislation provided for better supervision of the subject of such judicial deposits. Queen Juana and her husband in 1532, and Philip II. later, provided that men of credit and wealth, of good standing, should be appointed such trustees. Novisima Recopilacion, bk. 11, title XXVI., law 1. Philip II. and his son further provided that the municipal scrivener (escrivano) should keep an account of such deposits. Novisima Recopilacion, bk. 11, title XXVI., law 2. Charles IV. in 1798 established a sinking fund by means of cajas de amortizacion, wherein such deposits should be made. Novisima Recopilacion, bk. 11, title XXVI., law 9.

The Spanish Law of Civil Procedure was in force in Porto Rico up to the time of the adoption of the Act of March 1, 1902, to secure the effectiveness of judgments. The American military occupation did not change laws affecting private relations

except so far as ordered by the military authorities. These made no change in private procedure except as to the matter of proof. Gen. Order No. 118, Aug. 16, 1899 (4 Laws, etc. P. R. Washington 1909, p. 2247). There was at first considerable uncertainty as to the details of procedure, at least in the Federal court. As the Revised Statutes, § 915, contemplated attachment according to local·law, and the local law was not clear, Judge Holt adopted a set of rules almost introducing common-law practice, including attachment. Re rule ten, 1 Porto Rico Fed. Rep. 450. Then came the act in question to secure the effectiveness of judgments. All doubt as to procedure was removed by the adoption of the Code of Civil Procedure, March 10, 1904, which has never been supposed to repeal the Security Act of 1902, in question. New rules were adopted by this court in 1904, omitting that on attachment, and the local practice has been followed.

Such is the ancestry of the law to secure the effectiveness of judgments, and tends to show that its basis is rather to hold the attached property in a kind of public receivership, than to vest absolute rights. When carried through the result is the same, and as between private creditors the procedure is not dissimilar to the American attachment. Thus priorities are regulated by the order of the attachments. Supreme Court of Spain, Jan. 10, 1872, 25 Jur. Civ. 43; Auffant v. Ramos, 23 P. R. R. [385] 416 (Spanish). Local decisions are wanting on this special point. It has been held that in exemption matters attachment and execution stand on a different footing. Laguna v. Quiñones, 23 P. R. R. [358] 391 (Spanish). But the nature of the proceeding, the necessity for supervision by the court,

make even stronger for the Porto Rican law what seems to be the doctrine of the Larremore Case for the states.

It follows that the review of the referee's decision prayed for is granted, the lien he found is denied, and he is directed to proceed in accordance with this opinion.

It is so ordered.